(83 App. Div. 45.)

### KAPELLA v. NICHOLS CHEMICAL CO.

(Supreme Court, Appellate Division, Second Department. May 28, 1903.)

1. INJURY TO SERVANT—FAILURE TO PROMULGATE RULES.

Decedent, employed in defendant's chemical works, wheeled a barrow of ore to a freight elevator, carried it up the elevator to a platform in front of a furnace, dumped it, and returned to the elevator, drawing his barrow behind him. As he was stepping on the elevator, it descended, causing him to fall with it, and causing his death. There was nothing to show who started the elevator. One standing on the platform could not see whether any one below was pulling it down. There were no rules posted, nor any evidence that rules were posted in other similar establishments, nor that the posting of any rules would have prevented the accident, nor that rules would have been practicable, nor any suggestion of a formulated rule. Only three men used the elevator in bringing ore to the platform. *Held* error to submit to the jury whether defendant was at fault in not making and promulgating proper rules.

Hooker, J., dissenting.

---

¶ 1. See Master and Servant, vol. 34, Cent. Dig. § 283.

Appeal from Trial Term, Kings County.

Action by Kate Kapella, as administrator of John Kapella, deceased, against the Nichols Chemical Company. Judgment for plaintiff. Defendant appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ. .

Charles C. Nadal (William G. Wright, on the brief), for appellant.

A. H. Dailey, for respondent.

GOODRICH, P. J. The plaintiff's intestate, John Kapella, was killed at the defendant's works by the fall of an elevator. His administratrix has recovered a verdict, and the defendant appeals from the judgment entered thereon and from the order denying the motion for a new trial.

Defendant operated a building for smelting ore. The furnaces were so constructed that it was necessary to have a raised platform to enable employés to reach the door of the furnace where the ore was thrown in. This platform was 8 or 10 feet above the main floor of the building, and there was an ordinary freight elevator, about 6 feet square, which ran from the main floor to the platform. The men were accustomed to fill their wheelbarrows with ore some distance from the elevator, and wheel them singly upon it, and then to pull a hand rope, causing the elevator to rise to the platform, where the barrow was wheeled off, emptied in front of the furnace, and taken back upon the elevator, where the man again pulled the rope, causing the elevator to descend to the main floor, so that the barrow could be wheeled off. The platform was only large enough for a single barrow at a time. On August 10, 1900, about noon, Kapella had in this method taken a barrow of ore to the furnace, and dumped it on the platform, and returned to the elevator, drawing his barrow behind him. The elevator floor was level with the platform. Just as he was stepping upon the elevator, it descended, causing him to fall with it, the barrow falling upon him, causing injuries from which he died. He had been engaged in defendant's works for two years and a half, and for five months before his death he was doing the same kind of work that he was doing at the time of the accident. The elevator could be worked up or down from either floor, but a person on the platform could not see whether any person below was pulling it down. There were no rules posted, nor any evidence that rules are posted in other similar establishments, nor that the posting of any rules would have prevented the accident, nor that rules would have been practicable, nor any suggestion of a formulated rule. The men, including Kapella, had been instructed that when a man came to the elevator on the ground floor and found it above with another man dumping, it should not be pulled down, and that the man should wait until it was brought down by the man above. There is nothing to show who started the elevator.

Plaintiff's main contention is that "defendant adopted a method of operating the elevator which occasioned Kapella's death, fraught with imminent danger to those employed upon it, in the absence of proper and rigidly enforced rules"; and that "the necessity for rules and sig-

nals controlling the operation of the elevator is manifested in defendant's evidence." Defendant contends that under the charge of the court "the jury were allowed to make rules for defendant's manufactory without any aid other than their ·own ingenuity. They had no basis for deciding what rule or device was necessary, practicable, or effective"; and also that "Kapella had * * * constantly operated this elevator for five months. Whatever the conditions and methods of conducting the work were they were fully known to him, and he assumed the risk"; and that "there is no evidence in this case that the accident was due to the absence of rules, or that any rule which could have been devised would have prevented or tended to prevent the accident." At plaintiff's request, and under defendant's exception, the court charged:

"First. That the rule is well settled that it is the duty of all persons and corporations having many men in their employ in the same business to make and promulgate rules, which, if observed, will afford protection to the employés. That is the more necessary where the manner of doing business is such that the danger or safety of an employé at any given time depends upon the way in which some other employé is engaged at the same time.. In such a case, where the action of one employé may make that dangerous which, if he took no action, would be safe, it is undoubtedly the duty of the common employer to make such rules as will enable the persons whose safety is put at risk to be advised of the danger and to avoid it."

This quotation is from the case of Eastwood v. Retsof Mining Co., 86 Hun, 97, 34 N. Y. Supp. 196, affirmed without opinion in 152 N. Y. 651, 47 N. E. 1106. In that case a boy 15 years of age went into a large unlighted bin, which held many tons of salt, for the purpose of shoveling away the salt, and so freeing the mouth of the chute through which salt was delivered into the bin. There were three chutes at the bottom of the bin for letting out the salt. These were opened, apparently without notice to the boy, and .as the salt ran out he sank down with it and was smothered to death. The arrangement was far more complex than a simple freight elevator such as in common use. It will be observed that the quotation applies the rule to cases where many men are employed. Manifestly, the men "employed" in the case at bar were those in the business of using the elevator at the time of the accident, and not those employed elsewhere about the works. There were only six men at the scene of the accident. Three of them were engaged in shoveling at the furnace, and three in bringing the ore to the platform by the use of the elevator. It can hardly be said that this constitutes many men. Nor was the work in which Kapella was engaged of a complex character. The raising and lowering of the elevator was a simple act.

Morgan v. Hudson River Ore & .Iron Co., 133 N. Y. 666, 31 N. E. 234, is direct authority upon the question involved. The plaintiff was engaged in loading a car with ore, and, after filling it, went under the car to remove some ore, when another car came down upon his car and started it, so that it ran over his hand. It did not appear who or what started the first car. The recovery was based upon the absence of rules. The court said (page 669, 133 N. Y., page 235, 31 N. E.):

. "It was not suggested at the trial, nor is it on this appeal, what particular rule the defendant could have adopted that would have been likely to pre-

vent the accident. No evidence was given that any rule is in use in business of a similar character by other corporations of the same class carrying on like operations, nor was there any evidence by experts or other witnesses to show that any rule was necessary or practicable in such cases. It was left to the jury to say whether or not it was a case for rules, and, if so, what particular rule should have been adopted. We know nothing with respect to the views entertained by the jury on these questions, except so far as they are indicated by their verdict for the plaintiff. It is not probable that they concluded that any definite rule should have been promulgated, but were content to hold that, as the plaintiff was injured, the defendant ought in some way to have prevented it, or, in case it did not, respond to him in damages. Almost every conceivable injury that a servant receives in the course of his employment may in this way be submitted to a jury, and with the same result."

So, also, in Berrigan v. N. Y., L. E. & W. R. R. Co., 131 N. Y. 582, 30 N. E. 57, where a person was injured while coupling cars, it was said (page 584, 131 N. Y., and page 58, 30 N. E.):

"There is no proof in the case that rules for such a case had ever been promulgated by any other railroad company, or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule. The learned trial judge submitted to the jury the question whether the defendant was at fault in omitting to make and publish such a rule. This opened to the jury a wide field for speculation and conjecture. In the absence of some proof on the part of the plaintiff that such a rule was in operation by other roads, or of persons possessing peculiar skill and experience in the management and operation of railroads to the effect that such a rule was necessary or practicable under the circumstances, or unless the necessity and propriety of making and promulgating such a rule was so obvious as to make the question one of common experience and knowledge, the court is not warranted in submitting such a question to the jury."

In Corcoran v. N. Y., N. H. & H. R. R. Co., 58 App. Div. 606, 69 N. Y. Supp. 73, the plaintiff was run over by cars which were being "kicked" about in the yards of the defendant. The latter requested the court to charge (page 607, 58 App. Div., page 74, 69 N. Y. Supp.):

"That the jury are not authorized to find a rule necessary or proper for the management of the yard in question, unless the proof shows that such rule was in force on some other road, or unless the proof shows that it was practicable and reasonable to provide against such an accident by a rule, or unless the propriety and necessity of that particular rule were so obvious as to make it a question of common experience and knowledge."

And this court declared:

"We are of opinion that the defendant was entitled to this direction, assuming that there was any question to go to the jury. It is not for a jury to say, after an accident has happened, that the defendant ought to have made and promulgated rules reasonable and practicable for the government of its employés which would have given this man 'more effective notice of danger than that which he received at the hands of the brakeman and others in the yard upon that occasion,' as suggested by the learned court in charging the jury, but whether the defendant has exercised that reasonable degree of care which the law demands, and this is to be determined by proof that some particular rule or rules which common experience and a knowledge of the dangers of the situation ought to suggest, if adopted and in force, would have obviated the danger. * * * The defendant was only bound to use ordinary care in formulating rules, and it is not reasonable to proceed upon the assumption that every injury to an employé can be guarded against and prevented by making such rules. * * * The plaintiff suggests no practicable rule. There is no evidence that rules for such a case had ever been pro-

mulgated by any other railroad company, or that it was reasonable or practicable to provide against the occurrence of such an accident by a rule."

To the same general effect is the case of Larow v. N. Y., L. E. & W. R. R. Co., 61 Hun, 11, 15 N. Y. Supp. 384, from which this court, Mr. Justice Bartlett writing, in Smith v. Lidgerwood Mfg. Co., 56 App. Div. 528, 530, 67 N. Y. Supp. 533, 534, quoted with approval the language of Mr. Justice Martin:

"I am of opinion that, before a railroad company can be found guilty of negligence in not making and promulgating any certain rule, it must at least be shown that the rule is practicable, proper, and, if observed, would give reasonable protection to its employés."

Mr. Justice Bartlett then added:

"This is equally true of any other corporation conducting a business of complexity through the agency of numerous employés assembled together."

I think these authorities are conclusive that the charge of the learned court was error, which requires a reversal of the judgment.

BARTLETT, WOODWARD, and JENKS, JJ., concur in the result solely on the ground that the proof shows that the deceased must have known that there were no rules, and so assumed the risk of the employment in their absence. HOOKER, J., dissents.