KNICKERBOCKER v. GENERAL RY. SIGNAL CO.

(Supreme Court, Appellate Division, Fourth Department.   July 6, 1909.)

1. MASTER AND SERVANT (§ 278*) — INJURIES TO SERVANT — ACTIONS — SUFFI-
   CIENCY OF EVIDENCE.

   Where, in an action for injury to an employé who fell and was caught by the automatic gate of an elevator descending as the car went upward, the proof simply showed that the car started upward as the employé was getting in, but why it started or how the employer or any of its employés were responsible for the upward movement was not disclosed, there was a total failure of proof of negligence.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 954; Dec. Dig. § 278.*]

2. MASTER AND SERVANT (§ 157*)—INJURIES TO SERVANT—WARNING.

   A signal by an employé about to operate a freight elevator, where it moves slowly and only a distance of 15 feet, may well be deemed adequate warning and more effective for the protection of others than a bell or other mechanical contrivance.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 303; Dec. Dig. § 157.*]

3. MASTER AND SERVANT (§ 132*)—INJURIES TO SERVANT—DEGREE OF CARE.

   An employer is not called upon to adopt the best possible method for operating a freight elevator, but merely to operate it in a manner reasonably safe for employés.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 267; Dec. Dig. § 132.*]

4. MASTER AND SERVANT (§ 141*)—INJURIES TO SERVANT—DUTY TO PROMULGATE
   RULES.

   The failure to promulgate rules governing the operation of a freight elevator was not negligence by an employer where there was neither any intricacy in its running, nor obvious necessity for the adoption of rules to prevent accidents.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 283; Dec. Dig. § 141.*]

   McLennan, P. J., dissenting.

Appeal from Trial Term, Monroe County.

Personal injury action by Edward F. Knickerbocker against the General Railway Signal Company. From a judgment for plaintiff for $700 and an order denying a new trial, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Fred C. Goodwin, for appellant.
Cogswell Bentley, for respondent.

SPRING, J. The defendant is a corporation engaged in the manufacture of devices and appliances for use in the construction and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

operation of railway signals. In October, 1906, it carried on its business near the city of Rochester in a building about 200 feet in length and 100 feet in width and one story in height, except that there was a gallery above and extending over a part of this story. From the ground floor to the floor of the gallery was 15 feet. There were from 200 to 250 men employed in the building, the greater number on the lower floor. There was a freight elevator in one corner of the building operated by a steel cable with hydraulic pressure; and, as the cable was pulled up, the car descended, and, when pulled down, it was lifted upward. The elevator well was closed on the north and east sides, and the front or south side was open, and there was a wire partition on the west side. When it was at the gallery floor, it was open on three sides, and a person could readily see from that floor to the entrance way of the elevator on the floor below. There was a catch operating automatically which stopped the car at either floor. The car moved very slowly, ordinarily making the 15 feet in 22 seconds, and with maximum speed in 15 seconds. Gates were provided which also operated automatically. When the car was on the ground floor, the lower part of the gate was 7 feet above the floor, and, as the car moved upward, the gate descended, closing up the entrance to the well when the car reached the gallery floor. There were no rules for the operation of the car. It was used principally for the carriage of castings and appliances which were assembled in the gallery. When one of the employés desired to use it, if it was on the ground floor, he looked down, called out or shook the cable as a warning. All knew of this plan. The men below could easily see up the 15 feet, and ascertain if the way was clear.

On the 27th of October, 1906, the plaintiff, a man 29 years of age, had been at work for the defendant operating this elevator for three weeks, carrying articles up and down on a truck. In the afternoon he came down the car with a block signal on a truck, and wheeled it away when the car stopped at the ground floor. He returned to the car, pushed the truck on, and, as he was getting on, the car started upward, he fell down for what reason does not appear, and was caught by the automatic gate descending as the car went upward, and he was seriously injured. He claims that the defendant should have provided some signaling device to warn employés that the car was to be set in motion; and that proper rules for its operation should have been promulgated. In the first place, there is an utter absence of proof of any failure to give adequate warning. So far as appears in the record, the man who started the car, if it was started from the gallery floor, may have called out to the plaintiff or may have shaken the cable, giving the recognized warning signal. There is no evidence bearing upon that subject. The plaintiff may have set the car in motion himself. The proof simply shows that the car started upward as he was getting in. Why it started, or in what way the defendant or any of its employés was responsible for the upward motion, is not disclosed. The plaintiff charges the defendant with negligence, and has failed to prove this essential part of his case, and the discussion might end here. However, the plaintiff has not proven the necessity of any other warning signals than those used by all the employes,

including the plaintiff. The expert on the part of the plaintiff and those testifying for the defendant agreed that they never saw an elevator operating only between two floors equipped with a bell or other warning signal device. In cars running in buildings consisting of several stories devices of that kind are common. A signal by the person about to operate the car where it moves slowly and only a distance of 15 feet may well be deemed adequate warning, and more effective for the protection of others than any mechanical contrivance. The efficiency of the plan by common practice prevailing in this manufactory had been demonstrated by long use, and apparently no injuries had been sustained by any of the many employés who had used this car. The defendant was required to operate its car in a manner reasonably safe for its servants. It was not called upon to adopt the best possible method. Bennett v. L. I. R. R. Co., 163 N. Y. 1, 5, 57 N. E. 79; Stringham v. Hilton et al., 111 N. Y. 188, 195, 18 N. E. 870, 1 L. R. A. 483 et seq.; Healey v. B. R. & P. R. R. Co., 111 App. Div. 618, 620, 97 N. Y. Supp. 801.

The rule applicable is thus well stated in Stringham v. Hilton et al., 111 N. Y. 196, 18 N. E. 872, 1 L. R. A. 483:

"The test is not whether the master omitted to do something he could have done, but whether in selecting tools and machinery for their use he was reasonably prudent and careful, not whether better machinery might not have been obtained, but whether that provided was, in fact, adequate and proper for the use to which it was to be applied."

The plan which the good judgment of the employés alert for their own safety had long adopted by common consent had resulted in their security, and the defendant would not be expected to depart from the method tried by experience and experiment with some device the usefulness of which had not been demonstrated, for no other like elevator seems to have been equipped with any mechanical contrivance whatsoever.

Nor was the defendant liable for negligence, in that it had not adopted rules for the operation of the car. Just what especial rule should have been promulgated is not suggested by the counsel for the respondent, and none was suggested to the jury. The employés by their own volition and with the acquiescence of the defendant had adopted their own method, and, so far as the evidence shows, had adhered to it without variation. Rules are important where the conduct of the business is complicated or dangerous, or their utility has been proven, or where it is obvious their adoption and enforcement are necessary precautions in preventing accidents. Morgan v. Hudson River Ore & Iron Co., 133 N. Y. 666, 31 N. E. 234; Berrigan, as Adm'r, v. N. Y., L. E. & W. R. R. Co., 131 N. Y. 582, 30 N. E. 57; Kapella v. Nichols Chemical Co., 83 App. Div. 45, 82 N. Y. Supp. 477. There was no mystery and no intricacy in running this elevator. The defendant could not have foreseen the accident, which was unusual and not to be apprehended. The only expert who testified on the subject of rules in response to a question by the counsel for the plaintiff said it was not "customary to have rules posted in

factories governing the men in the use, management, and operation of freight elevators."

The judgment should be reversed.

Judgment and order reversed, and a new trial granted, with costs to the appellant to abide event. All concur, except McLENNAN, P. J., who dissents in an opinion.

McLENNAN, P. J. (dissenting). The jury has determined that the plaintiff sustained damages in the sum of $700 resulting from injuries sustained by him in an accident which occurred on the 27th day of October, 1906, at about 2 o'clock p. m., while he was in defendant's employ, and that such accident was caused solely through the negligence of the defendant. It is not claimed by the appellant that he verdict is excessive or that error was committed by the learned trial court in the admission or exclusion of evidence, or in its charge to the jury. Therefore the only questions presented by this appeal are: (1) Was the defendant guilty of actionable negligence? (2) Was the plaintiff free from contributory negligence? (3) Did the plaintiff assume the risk of the accident? I understand the opinion concurred in by a majority of this court to hold that as matter of law the defendant was not guilty of actionable negligence, and that the plaintiff did not give proof tending to establish his freedom from contributory negligence.

The material facts are not in dispute. The defendant is a manufacturing corporation having its factory at Lincoln Park, just outside of the city of Rochester, and is engaged in the manufacture of railway signal devices. At the time of the accident, the plaintiff was employed in defendant's machinery department, located in a large one-story building, 200 or 250 feet in length and about 100 feet wide. This building had a balcony or gallery floor 15 feet above the ground floor, extending around the outside of the building, leaving an open space in the center. There was an elevator located in the northeast corner of this building—a slow moving freight elevator, operated by hydraulic power, which ran only from the ground floor to the balcony, a distance of 15 feet. It was inclosed on one side (east) by the east wall of the building, on the back (north) by a wooden partition. At the front the elevator was entirely open, and at the west side there was only a wire partition. On the gallery floor the conditions were similar, except that at the back (north side) there was an open wire partition. So that on the gallery floor the elevator well was open on three sides, and so that a person could easily look from that floor down to the entrance of the elevator on the ground floor. The elevator was operated by a steel cable located at the right-hand side looking into the car. A pull down of the cable caused the car to ascend, and an upward pull caused it to descend. The car stopped automatically at each floor, there being an automatic stop or catch which stopped the car at the floor without any action of an operator. The elevator was one of the slowest moving built. Ordinarily it would only move at the rate of 45 feet per minute, but, when the cable was given an extraordinary pull, it would run at the rate of 65 feet per minute. The elevator was equipped with automatic gates at each floor, which were operated

by the mechanism of the elevator, and in such manner as that, when the car left the floor, the gate descended at the same rate of speed as the car ascended. When the car of the elevator stood on the ground floor, the bottom of the gate was about seven feet above the floor, and, when in operation, the car and gate moved at exactly the same rate of speed; that is, the gate descended at the same speed as the car ascended.

It appears without contradiction that between 200 and 250 of defendant's employés were at liberty and were accustomed to use this elevator at will, and for any purpose that either or any of them might desire. No signaling device had been provided by which a person at either landing of the elevator could be informed when it was to be started by any one of such employés, except as he might shake the cable, and thus give an indication of his intention to use it. Concededly no rule had even been promulgated by the defendant to the effect or in substance that an employé should not move the elevator until after he had ascertained that it was not in use or about to be used by another employé. In other words, such elevator under the system of operation employed by the defendant was liable to be moved by any one of its employés at their individual option, and, so far as rules were concerned, regardless of the safety of other employés who might be engaged in operating the same, and it was thus permitted to be used indiscriminately by from 75 to 100 employés for taking material from one floor to the other. It was practically in constant use, never being idle for more than five minutes at a time during the day. The learned trial court submitted to the jury the question of defendant's negligence in the following language:

"In this case I am going to submit it to you as a question to be decided by the jury, as a question of fact, whether, considering the plant that has been described to you and considering the number of men who were using this elevator, it was exercising reasonable care on the part of the employer to allow this elevator to be used by the employés as it was used in this case without more safeguards in the way of signals, and without some definite rule or regulation promulgated and enforced among the employés directing them as to the making of suitable signals before attempting to raise or lower the elevator. I am obliged to submit that to you as a question of fact to be decided, and you will have to consider the whole situation. You must determine whether, from the number of men using this elevator, it was necessary for the reasonable protection of the employés there for the signal company to lay down reasonable regulations as to the use of the elevator and as to preliminary signals to be given by one operative for the information of the others before the elevator be raised or lowered. That is a question of fact to be determined by the jury."

It seems to me that in thus submitting to the jury the questions of fact the issue as to defendant's negligence was stated as favorably to the defendant as it was entitled to. The question or questions thus presented were found in favor of the plaintiff, and I think it cannot be said that there is any evidence which tends to impeach the correctness of the jury's determination in the premises. Here was an elevator permitted to be used indiscriminately by 75 to 100 employés, any one of whom could move it upwards or downwards by simply pulling upon the cable, which was accessible to all, and the only method of giving information that one or the other of such employés was

to put such elevator in motion was by a shake or rattle of such cable. I think it was clearly a question for the jury to determine whether the defendant ought not in the exercise of reasonable care and prudence to have provided another or better system of signaling to indicate that the elevator was to be moved than such as is described by the evidence in this case. I think it also clear that it was a question of fact for the jury to determine whether the defendant was not guilty of negligence because of its failure to promulgate and enforce rules which would have prevented the starting of such elevator by one employé until he had discovered that it was not in use or about to be used by another. The method of using the elevator in question adopted by the defendant, considering the number of employés who were at liberty to put it in motion at any time, was negligent in the extreme, and was such that any employer, in the exercise of ordinary care and prudence, who had given the matter attention, would have discovered that such method of operation was attended with unusual and unnecessary danger to his employés. I conclude the finding of the jury that the defendant in this case was guilty of actionable negligence is abundantly justified by the evidence, and that any other finding would have been contrary to and against the weight of the evidence.

It is said that the plaintiff failed to prove his freedom from contributory negligence, and for that reason is not entitled to recover as matter of law. The plaintiff at the time in question had been in defendant's employ for about three weeks, and during that time had been engaged in putting heavy castings on his wheelbarrow at the upper or balcony floor, wheeling them to the door of the elevator at such floor, then pulling the cable in such manner as to cause the floor of the elevator to descend to a level with the floor below. He would then take his wheelbarrow out, and deposit the casting where it was required, and then return to the elevator to be taken to the floor above for another load. At the time in question, the plaintiff had loaded a casting upon his wheelbarrow, wheeled it onto the elevator floor, which was at a level with the upper or balcony floor, caused the elevator to descend until it came to a level with the ground floor, and then ran his wheelbarrow from the elevator to the place where the casting was to be deposited. He immediately returned and found the elevator floor in precisely the same position as he had left it. He ran his wheelbarrow onto the elevator floor, and, just as he had raised his foot to step in, following his wheelbarrow, an employé upon the floor above raised the elevator, causing him to lose his footing. He fell backwards, and he was caught between the ascending floor of the elevator and the descending gate, and sustained the injuries of which he complains.

It seems to me that from those facts, which are uncontradicted, it was a fair inference to be drawn by the jury that he was exercising ordinary care and prudence; that he was performing his duty in a reasonably careful and prudent manner. He did not say upon the stand that he was careful. He did not testify that he looked or listened before he attempted to enter the elevator. He simply says that he left the floor of the elevator on a level with the floor where he was to deposit his load; that he came back to go after another load; that

he found the elevator floor in exactly the same position as he left it; that he ran his wheelbarrow upon it in the ordinary way, and that as he attempted to step onto the floor of the elevator, following his wheelbarrow, the floor was raised; that he was thrown backwards and caught between the floor and the descending gate. It seems to me that upon those facts the jury was amply justified in finding as it did that the plaintiff was free from contributory negligence. It cannot be said upon the evidence in this case, under the authorities, that the plaintiff cannot recover because of the assumption of risk on his part.

I conclude that the judgment and order appealed from should be affirmed, with costs.

