It appears that section 7 applies only where the bonds of a corporation have been lawfully issued. Some force must be given to the last provision of section 6, which is mandatory in its requirement that the resolution shall provide for the raising annually by tax. If the proposition was just as forceful of taxation by reason of section 7 without inserting provision therefor, then the last sentence of section 6 is in reality of no effect, and its command may with impunity be disregarded.

Again, if the Seneca Falls women were entitled to vote, the bonds were not lawfully issued, because one-half of the voters were absolutely denied their right to vote upon this proposition. I do not believe that the Moir Case is an authority governing the disposition of this motion.

I hold that the bonds contemplated by the resolution will, when lawfully issued, become a funded debt for which taxes must be levied and assessed, collected and paid, the same as for other debts and charges; and, second, that the resolution must and did provide for raising annually by taxes a sum sufficient to pay the principal and interest accruing upon such bonds. Therefore the proposition was one to raise money by tax or assessment, and hence the women were not disqualified solely by reason of their sex from voting thereon. On the contrary, having the other qualifications of voters, they were expressly authorized by the statute to vote thereon. To hold otherwise is to nullify legislation. The election was void, and the bonds authorized thereby cannot be lawfully issued.

Motion must therefore be, and is, granted, with costs, and the penalty of the bond fixed at $5,000.

---

## NICHOLS v. SEARLE MFG. CO.

(Supreme Court, Appellate Division, Third Department. September 15, 1909.)

1. MASTER AND SERVANT (§ 117*)—INJURIES—NEGLIGENCE—CONSTRUCTION OF ELEVATOR.

Defendant maintained an elevator in its factory building, which consisted of two stories and a basement, where it employed some 400 persons, the elevator being operated by a cable which was pulled up or down whenever any one desired to use the elevator, without any warning to those on other floors who might be then using it, but the entrances were protected by automatic gates which ascended and descended as the elevator approached and left the floor. *Held*, that defendant was negligent in not providing some means to prevent the attempted simultaneous operation of the elevator by employés on different floors.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 208; Dec. Dig. § 117.*]

2. MASTER AND SERVANT (§ 243*)—INJURIES—CONTRIBUTORY NEGLIGENCE—DISOBEDIENCE OF ORDERS.

A servant who was specially instructed not to ride on the elevator while working was guilty of contributory negligence if he was killed by being caught between the elevator and the descending gate while riding upstairs.

[Ed. Note.—For other case, see Master and Servant, Cent. Dig. §§ 682, 759-775; Dec. Dig. § 243.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

3. MASTER AND SERVANT (§ 276*)—INJURIES—SUFFICIENCY OF EVIDENCE—NEGLIGENCE.

In an action for decedent's death by being killed in defendant's cable elevator while he was ascending therein, where plaintiff claimed that decedent was crushed between the elevator and the gate which descended as the elevator ascended, evidence *held* not to show that the accident was due solely to defendant's negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 276.*]

4. DEATH (§ 58*)—ACTIONS—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

While less evidence of freedom from contributory negligence is required where the injured person was killed and no one witnessed the accident, there must be some evidence legitimately tending to prove freedom from contributory negligence.

[Ed. Note.—For other cases, see Death, Cent. Dig. §§ 75–78; Dec. Dig. § 58.*]

5. MASTER AND SERVANT (§ 281*)—INJURIES—CONTRIBUTORY NEGLIGENCE—SUFFICIENCY OF EVIDENCE.

Where the elevator in which decedent ascended and was found dead with his feet hanging out of the cage after it had passed the entrance gate, which automatically lowered as the elevator descended, was under his control, so that his death may have depended upon his acts in managing it, his freedom from contributory negligence cannot be inferred from the nature of the accident, without some evidence, direct or circumstantial, tending to show that he was not killed by his own negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 987–996; Dec. Dig. § 281.*]

Appeal from Trial Term, Rensselaer County.

Action by Barker P. Nichols, as administrator of Robert K. Nichols, deceased, against the Searle Manufacturing Company. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and CHESTER, KELLOGG, COCHRANE, and SEWELL, JJ.

Rosendale & Hessberg (Murray Downs, of counsel), for appellant.
Holmes & Bryan (John B. Holmes, of counsel), for respondent.

COCHRANE, J. The plaintiff has recovered a verdict for the negligence of the defendant in causing the death of his son, 16 years of age. The defendant is engaged in the business of manufacturing collars and cuffs in the city of Troy, and had in its employ at the time of the accident about 400 servants. The plaintiff as one of such servants was killed in an elevator.

The building in which defendant conducted its operations consisted of two stories and a basement. The elevator traveled in a shaft extending from the basement to the second story. It had no attendant, and was operated by a cable. Whenever any one had occasion to use the elevator, he would pull the cable up or down as the case might be, and thus bring the elevator to the desired floor. This was done without any signal or warning to any one who might chance to be using the elevator at one of the other floors. The floor of the elevator was about five feet square, and its entrance was protected by automatic gates at each floor of the building, which ascended as the elevator ap-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

proached and descended as it left such floor. The gates would raise to their full extent seven feet, and, as the elevator ascended, it would meet the descending gates three or four feet above the floor of the building. The duty of the deceased was to sweep the main floor of the building, deposit the sweepings in a box about two or three feet in dimensions, place the box on a truck with wheels, roll the truck with the box on the elevator, pull the cable so as to cause the elevator to descend, walk downstairs into the basement, and there deposit the sweepings in their proper place. There was no eyewitness to the accident. The last seen of the deceased alive was in the basement when he put the truck on the elevator, and went upstairs. Shortly thereafter his body was found lying on the floor of the elevator, with his feet extending outwardly and hanging below the elevator floor. The elevator had gone above the main floor of the building and above the gate, which had automatically lowered and was in its proper position. It is the claim of the plaintiff that the deceased was caught and crushed between the elevator as it ascended and the descending gate. He had evidently been struck a violent blow on the head. The top of his skull and part of his brains were found in the basement below.

I think the evidence justifies the inference that the defendant was negligent in not providing some rule or system which would prevent the attempted simultaneous operation of the elevator by different employés on different floors of the building. It is clear that an accident might happen to one employé properly using the elevator by the efforts of another employé to operate it at the same time from another floor. And considering the large number of employés, and the extensive nature of the defendant's business, it should have taken appropriate steps to guard against such a contingency. But the difficulty with the plaintiff's case is that no connection has been shown between such negligence and the accident. Neither does it appear that the deceased was free from contributory negligence. The elevator at the time of the accident was subject to his own operation or manipulation. The only narrative of his conduct is given by a witness called by the plaintiff, who testified that a minute or two before he heard of his death he saw him in the basement with the truck. The witness says: "I saw him put the truck on the elevator and ascend upstairs." If by this statement the witness meant that the deceased rode upstairs on the elevator, he was guilty of contributory negligence, for the evidence shows that he was under specific instructions not to ride on the elevator. If, however, we assume that he walked upstairs after depositing the truck in the elevator, as it was his duty to do, we are then left entirely in the dark as to his conduct on reaching the floor above. It was his duty to there stop the elevator as it approached that floor. Whether inadvertently he allowed it to pass the level of the floor, and was killed in a procrastinated effort to stop it, or whether in some other manner due to his own heedlessness he met his death, we are unable to say. The jury could not say, but could merely speculate and conjecture. It might throw considerable light on the casualty if plaintiff had informed us whether or not the truck was found on the elevator floor with the body of the deceased, for we might then draw an inference as to whether he had brought the elevator to a stop, and re-

moved the truck before the accident happened. But, if such were the case, even then the question would arise as to what duty could have called him to the elevator after the removal of the truck. The whole case is surrounded with doubt and conjecture, and it cannot be said that the unfortunate accident was due solely to the negligence of the defendant.

The rule requiring proof of freedom from contributory negligence is relaxed to the extent that less evidence is required where the victim of the accident has lost his life and no one saw the occurrence. But, nevertheless, there must be some evidence which tends legitimately to prove the fact. In this case there is an absence of any evidence on that point. As we have seen, the plaintiff has not even placed us in possession of facts susceptible of proof. Moreover, this is not a case where freedom from contributory negligence can be inferred from the nature of the accident itself, for the reason that the operation of the elevator was directly under the control of the deceased, and upon his acts in the management of the same the accident may have depended, and it was necessary to show, not necessarily by direct evidence, but by circumstances having at least some probative force, that it was not his act or omission which brought upon himself the unfortunate fatality.

The judgment and order must be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.