(134 App. Div. 363.)

STOKES v. BARBER ASPHALT PAVING CO.

(Supreme Court, Appellate Division, First Department.  October 22, 1909.)

1. MASTER AND SERVANT (§ 221*)—INJURIES TO SERVANT—UNGUARDED ELEVATOR—ASSUMED RISK—PROMISE TO REPAIR.

While the doctrine of assumed risk on the part of a servant, who knows the existence of the defect by which he is injured, extends to a known violation of statute, requiring the guarding of elevator shafts, etc., a servant did not assume the risk of injury resulting from an unguarded shaft in violation of statute, where he had complained of the danger, and the master had promised to remedy the defect, without specifying any time within which it would do so, and a reasonable time had not expired.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–647; Dec. Dig. § 221.*]

2. MASTER AND SERVANT (§ 221*)—INJURIES TO SERVANT—ASSUMED RISK—PROMISE TO REPAIR.

A master, by promising to repair a defect complained of as an inducement to his servant to continue, forthwith takes from the servant the risk of injury, and thereafter during the period for repair assumes the risk; and, if no time is fixed, the master's undertaking runs for a reasonable time.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 638–647; Dec. Dig. § 221.*]

3. MASTER AND SERVANT (§ 221*)—DEFECTIVE APPLIANCES—PROMISE TO REPAIR.

A master's promise to repair a defect in the ways and works can be made by one standing in the master's stead or having authority to make the repairs; express delegation of authority not being required.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 640; Dec. Dig. § 221.*]

4. MASTER AND SERVANT (§ 221*)—INJURIES TO SERVANT—UNGUARDED ELEVATOR—PROMISE TO REPAIR.

Where defendant's superintendent had power to stop, start, and repair the machinery, and to hire and discharge employés, it might be fairly inferred that he was authorized to promise an employé on defendant's behalf to guard the elevator well.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 640; Dec. Dig. § 221.*]

5. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—NEGLIGENCE—QUESTION FOR JURY.

In an action for injuries to a servant, resulting from an alleged unguarded elevator well, whether defendant was negligent in failing to place guards about the elevator, or in not placing one man in charge of its operation, or in failing to install some signal, which would warn workmen about it that it was about to be moved, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1010, 1025; Dec. Dig. § 286.*]

6. MASTER AND SERVANT (§§ 288, 289*)—INJURIES TO SERVANT—ASSUMED RISK—CONTRIBUTORY NEGLIGENCE.

Where plaintiff, a few days prior to his injury, resulting from defendant's unguarded elevator well, called the attention of defendant's superintendent thereto, and he promised to remedy the defect, and did erect guards on the second floor, but nothing had been done to protect employés working around the elevator on the first floor at the time plaintiff was injured, whether plaintiff was negligent, and whether he assumed the risk, notwithstanding defendant's promise to repair, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1084, 1097; Dec. Dig. §§ 288, 289.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, New York County.

Action by Eugene E. Stokes against the Barber Asphalt Paving Company. From a judgment dismissing the complaint, plaintiff appeals. Reversed, and new trial granted.

Argued before PATTERSON, P. J., and INGRAHAM, LAUGHLIN, CLARKE, and HOUGHTON, JJ.

Arthur C. Train, for appellant.

Frederick W. Catlin, for respondent.

HOUGHTON, J. The defendant conducts a manufacturing establishment for the manufacture of asphalt paving blocks in the state of New Jersey. The plaintiff was in its employ as boss of a gang of men. Immediately outside its press house and in the open yard the defendant maintained an elevator, supported by upright posts, used for hoisting and lowering material to and from the second story. The elevator pit was only a few inches in depth, and only sufficient to permit the floor of the elevator to sink to the level of the ground, so that material might be wheeled upon it. The elevator shaft was open on all sides, both at the ground and at the second story, and was operated, not by an elevator man, but by any one who had occasion to use it.

At the time of the accident there was a law of the state of New Jersey, enacted for the purpose of regulating the age, employment, safety, help, and work hours of persons, employés, and operatives in factories, workshops, mills, and all places where the manufacture of goods of any kind was carried on, providing that the openings of all hoistways hatchways, elevators, and well holes upon every floor of any place coming within the provisions of the act should be protected by good and sufficient trapdoors of self-closing hatches and safety catches, or strong guard rails, at least three feet high, and should be kept closed and protected at all times except when in actual use.

On the ground floor of the press house there were very large outside doors so close to the elevator that it interfered with their being opened. The superintendent of defendant directed the plaintiff to remove the hinges upon them, and for the purpose of so doing the plaintiff procured a block and tackle, and lifted one of the doors from its hinges, and held it suspended for the purpose of unscrewing the nuts and driving out the bolts which held the hinges in place. While the door was thus suspended it formed an angle with the elevator shaft. The defendant's superintendent was present, assisting and directing the plaintiff, and in the course of the work of unscrewing the nuts it became necessary for the plaintiff to go into the angle formed by the door and the elevator shaft, in order to unscrew the nut of a particular bolt, and while he was engaged in that work, his body partially projecting over the elevator shaft, some one lowered the elevator, and it caught him on the hip and crushed him underneath, tearing off one of his legs at the knee joint.

A few days before the accident the plaintiff had called the attention of the superintendent of defendant to the unguarded condition of the elevator, and told him that he had seen a man several days before wheel a barrow load of blocks onto the elevator when some one above

pulled the cord and·the elevator ascended, throwing the load back, and that the workman narrowly escaped injury, and pointed out to him that it was equally dangerous at the second story, because some one might attempt to step on the elevator just as it was being started by some other person.  The plaintiff further said to the superintendent:

"This is a very dangerous place here.  I do not like to work about it.  Some one is liable to be hurt."

And the superintendent replied:

"I will have it attended to."

Rails were immediately put around the elevator at the second story, but none, up to the time of the accident, were placed around it at the ground.

At the close of the plaintiff's testimony, on motion of the defendant, the court granted a nonsuit, and from such disposition of his case the plaintiff appeals.

The accident happened at a manufacturing plant in the state of New Jersey, and the liability of the defendant is governed by the law of that state.  The acts requiring the guarding of elevator shafts, above adverted to, were pleaded and proved, and the defendant manifestly came within its provisions and was guilty of a violation of its requirements.  In considering other provisions of the same act, the Court of Errors and Appeals of that state, in Mika v. Passaic Print Works, 70 Atl. 327, held that a violation of the act by the master to the knowledge of the servant did not relieve the servant from the assumption of the risk incident to the violation, and that such defense was available to the master, notwithstanding he failed to comply with the provisions of the statute.

While the doctrine of assumption of risk on the part of the servant who knows the existence of the defect prevails in that state and extends to a known violation of the statute, an exception also prevails, as it does in our own state, where the servant has complained and the master has promised to remedy the defect.  In Andrecsik v. New Jersey Tube Co., 73 N. J. Law, 664, 63 Atl. 719, 4 L. R. A. (N. S.) 913, the law is stated as follows:

"The servant assumes, not only the ordinary risk incidental to employment, but as well all risks arising and becoming known to him during his service.  The master, by promising to amend a defect complained of, as an inducement to the servant to continue, forthwith takes from the servant the risk, and thereafter, and during the period for repair, assumes it.  Where the promise is general and indefinite, the master's undertaking runs for a reasonable time.  Where it is to repair at a fixed time, it runs until the termination of the time fixed."

In the above case the decisions of the New Jersey courts are collated and reviewed, and the holding of our own Court of Appeals in Rice v. Eureka Paper Company, 174 N. Y. 385, 66 N. E. 979, 62 L. R. A. 611, 95 Am. St. Rep. 585, is approved and followed.  From this decision it will be seen that we are not compelled to assume that the rule of the common law as to assumption of risk prevails in the state of New Jersey as it does in our own, but we have an express holding of its courts that it does.

Such promise to remedy the defect can be made in behalf of the master by one standing in his place or having authority to make it. Express delegation of authority need not be proved, but authority may be inferred from such facts as fairly tend to show its existence. Spencer v. Haines, 74 N. J. Law, 13, 64 Atl. 970; Fox v. Kinnear Pressed Radiator Co., 75 N. J. Law, 716, 67 Atl. 1011. The superintendent of the defendant had power to stop, start, and repair the machinery of the defendant, and hire and discharge its men; and it may be fairly inferred that he had authority to make a promise in behalf of the defendant to repair a defective machine or guard against the defective situation. From what the plaintiff had observed, he concluded that the manner of operation of the elevator in the place where it was installed, as well as its unguarded condition, was dangerous to men working about it, and called the superintendent's attention to it, and he promised to have the defect remedied, and in fact did attempt to remedy it at the second floor, but did nothing so far as the ground floor, where the plaintiff was engaged, was concerned. The promise to remedy fixed no time, and therefore it was to be done within a reasonable time.

The elevator was open, operated by a piston, and not in charge of any particular man, but was operated by any workman who desired to use it. That it might be started by some one without the knowledge of others working around it was quite apparent. Under the facts proved by the plaintiff, we are of the opinion that it was for the jury to say whether or not in the exercise of reasonable care, it was the duty of the defendant to place some kind of guards about the elevator, or put it in charge of one man to operate, or install some signal which would warn workmen about it that it was being moved, as well as to determine, notwithstanding the promise of the defendant through the superintendent to remedy the defect, whether the plaintiff continued to assume the risk, or was guilty of contributory negligence on his part.

It follows that the judgment must be reversed, and a new trial granted, with costs to the appellant to abide the event.

PATTERSON, P. J., and LAUGHLIN and CLARKE, JJ., concur.

INGRAHAM, J. I concur in the reversal of this judgment on the ground that the defendant's superintendent, who was in charge of this work, knew or should have known that the plaintiff, while at work, was in danger of being struck by the elevator if it descended. It was his duty, therefore, to see to it that, while the plaintiff was at work, the working of the elevator was suspended, so as not to expose the plaintiff to any unnecessary danger. A violation of that duty was negligence, which justified a recovery.