[No. 13086.  Department One.  September 15, 1916.]

LOREN S. HULL, *Appellant*, v. L. M. DAVENPORT *et al.*,
*Respondents.*[1]

MASTER AND SERVANT — INJURIES TO SERVANT — NEGLIGENCE—SAFE PLACE AND METHODS—ELEVATORS—QUESTION FOR JURY. The negligence of the owner of a restaurant in failing to furnish safe appliances and adopt a system of rules in the use by waiters of an automatic freight and passenger elevator is a question for the jury, where the elevator was used every day by approximately 100 employees, there was no way for an employee on one floor to tell when another above or below was about to make simultaneous use of it, and a system of bells to give warning could have been installed at a cost of five dollars.

SAME. That there was no evidence of a general custom of employers to adopt a system of rules for warning or signal devices is a mere matter of defense to be submitted to the jury, and does not establish insufficiency of the evidence to show negligence as a matter of law.

SAME—INJURY TO SERVANT—SAFE PLACE AND METHODS—ASSUMPTION OF RISKS—QUESTION FOR JURY. Where waiters were required to use an automatic elevator having no system of signal devices or rules to give warning of simultaneous use by other employees, the employee does not assume the risks unless the danger was so obvious that no man of ordinary prudence would have obeyed the order; and the question is for the jury, where there was posted at the elevator entrance a standing order to "Use the Elevator," no means were provided for giving any sort of a signal, and the plaintiff testified that he did not appreciate or think of the danger because of absorption in his work.

SAME—INJURY TO SERVANT—FELLOW SERVANTS. The negligence of a fellow servant is not involved where, through the failure of the master to provide a safe place and safe appliances for the simultaneous use of an automatic elevator requiring a system of signals, a waiter was injured in entering the elevator when another employee started it without warning.

SAME—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY. A waiter entering an automatic elevator is not guilty of contributory negligence as a matter of law where he used it for the purpose intended in the only manner it could be used, and before doing so looked up and could see nothing to indicate that any one was in the act of starting it.

[1]Reported in 159 Pac. 1072.

Appeal from a judgment of the superior court for Spokane county, Sessions, J., entered June 11, 1915, upon granting a nonsuit, dismissing an action for personal injuries sustained by an employee in using an elevator. Reversed.

*Plummer & Lavin* and *Attwood A. Kirby* (*Mack F. Gose*, of counsel), for appellant.

*Danson, Williams & Danson* (*George D. Lantz*, of counsel), for respondents.

ELLIS, J.—Action for personal injuries. Defendants own and conduct a restaurant and hotel in Spokane. Plaintiff was an experienced waiter. At the time of the accident, he was, and for a considerable time had been, in defendants' service in that capacity. His duties were those of an ordinary waiter, in addition to which he was required to keep his tables stocked with staple supplies, such as crackers, sugar and the like. These he secured from the commissary department, located in the basement immediately beneath the restaurant proper and the kitchen, which were on the first floor.

At the time of the accident and for some months prior thereto, defendants had installed a slow-moving hydraulic elevator, used indiscriminately for persons and freight, extending from the kitchen immediately adjoining the restaurant to the basement floor. All of the waiters and employees about the restaurant and storeroom, estimated by witnesses at over one hundred, were accustomed to use this elevator daily. Three sides of the elevator shaft were enclosed by iron lattice work. The other side, which faced the kitchen on the upper floor and the storeroom on the basement floor, was open but for a gate which raised and lowered automatically as the elevator was lowered and raised, so that when the elevator was at the kitchen floor the gate would be at the basement floor, and *vice versa*, barring the entrance to the elevator well on either floor when the car was at the other. The gate and the car would thus meet each other at about

half the distance between the two floors. The elevator was operated by means of a chain which extended through the floor of the elevator, by pulling which the elevator was raised or lowered as desired. There was no operator in charge of the elevator. It was operated by the waiters and other employees indiscriminately at any time their work required its use. It was impossible for a person standing in the kitchen to look down this shaft and see if any person was about to enter the elevator at the basement floor. The same difficulty was presented to a person entering the car from the basement to determine whether the elevator was about to be operated by some one on the kitchen floor. Owing to some unexplained mechanical defect, the elevator when lowered would not descend flush with the basement floor, but would stop a foot or eighteen inches above the floor level. There was no call bell or other means of signalling from the basement to the kitchen, nor from the kitchen to the basement, when the elevator was about to be used, nor was any rule or system promulgated or enforced requiring the giving of any kind of warning when a person was about to enter or leave the elevator or about to set it in motion. A call from below could not be heard in the kitchen because of the noise of a steam dishwasher. Plaintiff testified that he did not realize or appreciate the dangers of operating the elevator without signals—that he never thought of it, as his mind was fully occupied with his work.

On September 27, 1914, plaintiff went to work at about seven o'clock a. m. He procured a requisition for supplies, went through the dining room to the kitchen, entered the elevator, pulled the chain and descended to the basement floor, where the elevator, as usual, stopped at about eighteen inches above the level of the basement floor. After securing the supplies, which he carried in his arms, he returned to the elevator, which was standing as he had left it, looked up to see if any one was about to start it from above, saw nothing to advise him of danger, and stepped upon the elevator. He

testified that, just at that time, one of the boxes in his arms slipped and his apron also caught, and just as his weight was partly on the elevator, it started up, throwing him to the floor of the elevator. The gate, as it descended, caught his right foot and dragged his leg between the gate and the elevator floor, causing a comminuted compound fracture of the femur which has resulted in a permanent shortening of the right leg of about two and one-half inches. No instructions nor warning had ever been given him as to the dangers attendant upon the customary use of the elevator. A sign was posted at the elevator in the kitchen reading: "Use the elevator." There was evidence that it was practicable to install a system of bells which would give warning either automatically or otherwise at an expense not exceeding five dollars.

The negligence charged was, (1) failure to furnish a safe place to work; (2) failure so to equip the elevator and to so maintain it that it could not be started at one floor without giving warning to persons entering or leaving it at the other; (3) failure to install any signal system or to promulgate and enforce adequate rules for the giving of warning that the elevator was about to be used. Defendant denied these allegations of negligence and set up as affirmative defenses assumption of risk, negligence of a fellow servant, and contributory negligence.

At the close of plaintiff's evidence, which tended to establish the foregoing facts, defendants interposed a challenge to its sufficiency, which was sustained, and a judgment of nonsuit was entered accordingly. Plaintiff appeals.

The duty of the master to exercise reasonable care to furnish the servant a reasonably safe place to work and reasonably safe appliances, and to promulgate and enforce a system of rules reasonably calculated to keep the place safe, is well established. What is reasonable care in a given situation, whether as applied to the question of primary negligence or that of contributory negligence, is always a question for

the jury whenever upon the evidence reasonable minds might reach different conclusions. *Richmond v. Tacoma R. & Power Co.*, 67 Wash. 444, 122 Pac. 351; *Williams v. Spokane*, 73 Wash. 237, 131 Pac. 833. It is also elementary that, on a motion for a nonsuit, the plaintiff is entitled to the benefit of every inference favorable to his cause of action which can reasonably be drawn from the evidence.

Measured by these principles, we are clear that, both on reason and the better considered authorities, the evidence was sufficient to take the question of respondents' negligence to the jury. It shows that the respondent had installed this elevator for the use of a large number of employees, approximately one hundred using it every day, some of them several times a day. No means whatever were provided for the safe use of the elevator. No system of bells or other warning device was installed. No rule was promulgated or enforced to obviate the danger of attempted simultaneous use of the elevator from the two floors. While there was evidence that there were two stairways leading from the restaurant floor to the basement, one of these was dark, steep, crooked and narrow and unfit for use, especially in carrying packages. The door to the other was part of the time kept locked and was locked on the morning of this accident. It plainly appears that employees were not expected to use either of these stairways for the purpose of carrying supplies from one floor to the other. It is clear that, notwithstanding the lack of any provision for its safe use, appellant and other employees were expected to use this elevator for the purpose for which he was using it at the time of his injuries. In a comparatively recent case in which the facts were almost an exact parallel with those here presented, and, indeed, so far as they present any material difference were more favorable to the employer than those presented here, the supreme court of New York held for the employer on the ground that there was a total failure of proof of negligence, Judge McLennan dissenting. *Knickerbocker v. General R. Signal Co.*, 133 App. Div. 787,

118 N. Y. Supp. 82. On appeal to the court of appeals, that court, without a dissent, reversed the supreme court and remanded the case for a new trial. *Knickerbocker v. General R. Signal Co.*, 209 N. Y. 404, 103 N. E. 765. The grounds of reversal are well expressed as follows:

"We are of the opinion that the evidence presented a question of fact for the jury. The danger of the attempted simultaneous use of the elevator by different employees on the ground and gallery floors was so obvious that a jury might find negligence on the part of the employer in failing to make any provision whatever by rule or otherwise to guard against it. The fact that a custom had grown up among the men to give some sort of a signal by shaking the cable or by calling out does not relieve the master of the performance of his duty. Of course, the chances of accident would increase as the number of floors increased, but the danger would be no less obvious with only two floors in a factory employing from 200 to 250 men, any one of whom was at liberty to use the elevator at will. It is unnecessary to prove by experts or by the experience of others the necessity of guarding against a danger so obvious that the men themselves, without any requirement of the master, were accustomed to signal. Though knowing of the custom, the employer should have anticipated the likelihood that, through carelessness or inadvertence, an employee might omit to give the signal and should at least have enforced the custom by a rule, the violation of which might involve some punishment. It is unnecessary to determine what would be the most effective way to guard against the danger, and of course the employer would not be guilty of negligence for failing to use the best way. The legal proposition is that the failure of the employer to take any measures whatever to guard against an obvious danger arising from the method of conducting his business presented a question of fact for the jury."

See, also, *Nichols v. Searle Mfg. Co.*, 134 App. Div. 62, 118 N. Y. Supp. 651; *Stokes v. Barber Asphalt Paving Co.*, 134 App. Div. 363, 119 N. Y. Supp. 37; *Coogan v. Aeolian Co.*, 87 Conn. 149, 87 Atl. 563.

Respondents contend that the proof was insufficient to show negligence, in that there was no evidence of a general custom

or usage of other employers using such elevators to adopt any particular system of rules for warning or any particular system of signal devices. In other words, that the evidence offered no standard by which to measure reasonable care. One case is cited so holding, two judges dissenting, on a state of facts somewhat similar to those here presented. *Zebrowski v. Warner Sugar Refining Co.*, 83 N. J. L. 558, 83 Atl. 957, 46 L. R. A. (N. S.) 233. But the reasoning in that case seems to us much less sound and convincing than that presented in the more recent New York case above quoted. In the first place, it seems to us that custom cannot, as a matter of law, relieve the master from the positive duty to furnish a reasonably safe place and reasonably safe appliances and promulgate reasonable rules for their use, looking to the safety of his servants. In this, as in other situations, it is almost impossible to find any two cases in which all the circumstances, surroundings and conditions are identical. Obviously, therefore, no absolute standard of reasonable care can be fixed, either by custom or otherwise. We believe that the better rule is that which this court and the courts generally have adopted, that, where the question is one of reasonable human conduct, it is always for the jury wherever upon the facts of the given case the minds of reasonable men might differ. *Young v. Aloha Lumber Co.*, 63 Wash. 600, 116 Pac. 4. In the second place, if, as a matter of fact, the employment of signals in the operation of an elevator such as this is not customary, that fact would be a mere matter admissible in defense to be submitted to the jury with the other evidence on the question of reasonable care.

Respondents contend that, even assuming that the question of primary negligence was one for the jury, appellant in any event assumed the risk of injury in using the elevator. It is argued that all of the obvious risks, even those of extraordinary danger resulting from the negligence of the master to perform a positive duty, are, as a matter of law, assumed by a servant in the absence of a complaint to the master and

a promise on the master's part to remove the danger.   The rule thus broadly stated without qualification is not the law. In the case before us, there was a standing order posted at the entrance to the elevator: "Use the elevator."  In addition to this, there was evidence that the employees had been specifically directed to use it.   True, the sign may not have been there that morning, but the order it conveyed had never been countermanded.   It is only where the danger of the act which the servant undertakes is not only open, patent and obvious alike to man and master and equally appreciated by both, but is so plain that reasonable men could not differ as to its existence, and so imminent that a reasonably prudent man would not undertake the act at all, that the servant assumes the risk in obeying the master's order.   The rule is thus tersely stated by the supreme court of Ohio:

"The clear result of the best considered cases is, that where an order is given a servant by his superior to do something within his employment, apparently dangerous, and, in obeying, is injured from the culpable fault of the master, he may recover, unless obedience to the order involved such obvious danger that no man of ordinary prudence would have obeyed it; and this is a question of fact for the jury to determine under proper instructions, and not of law for the court." *Van Duzen Gas etc. Co. v. Schelies*, 61 Ohio St. 298, 309.

See, also, *Waterman v. Skokomish Timber Co.*, 65 Wash. 234, 118 Pac. 36; *Williams v. Spokane*, 73 Wash. 237, 131 Pac. 833; *Rogers v. Valk*, 72 Wash. 579, 131 Pac. 231.

But it may be insisted that the sign was not an order.   If it was not, the query arises, what was it there for?  It is not claimed that this elevator was used or intended to be used by the public.   It was almost wholly used by employees such as the appellant.   The doctrine of assumption of risk, whether assumed to be founded in the fiction of an implied contract with pay commensurate with the danger, or whether it be referred to the maxim, *Volenti non fit injuria* (3 Labatt, Master and Servant, 2d ed., § 1285), is artificial and harsh at best.   It should not be extended beyond its reasonable limits.

It must be remembered that the plan of the establishment and the coordination of work is that of the master, deliberately adopted without consulting the servant. In adopting the plan, the master must be assumed to have considered it with a maturity and deliberation not possible to the servant absorbed in the details of his daily duties. Whenever, therefore, there is room for reasonable difference of opinion as to whether the servant so appreciated the danger as to make it reckless to proceed, the question is one for the jury, especially where the servant is proceeding under an order of any kind, however communicated. As said by this court in *Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 Pac. 819:

"Any other theory in law would be harsh and unjust. Hence, the courts generally have decided that the servant will not be charged with assuming the risk of a place unless the peril is so apparent that there could be no conflicting opinion between men of ordinary prudence and understanding; and when this appears plainly, and then only, it becomes the duty of the court to hold that as a matter of law the risk was assumed."

Respondents cite and mainly rely upon the case of *Danuser v. Seller & Co.*, 24 Wash. 565, 64 Pac. 783, which is also an elevator case. In that case, however, the master had provided a means of signalling, but the employees themselves, with the injured man's knowledge, had habitually neglected to use it. The sole negligence charged was the failure on the master's part to enforce the rule for the use of the signals. The injured man not only knew of the continued failure to use the signal, but apparently participated in that failure. In such a case, though the defense is referred to in many cases, as in the case cited, as an assumption of risk, it is really in its essentials a case of contributory negligence. 4 Labatt, Master and Servant (2d ed.), § 1362. That the real basis of the *Danuser* decision rests in the fact that the injured man there evidently approached an open shaft without taking any pains to discover whether the elevator was in

position or not, thus making a clear case of contributory negligence, is shown by the closing paragraph of the opinion. In view of the fact that, in the case before us, there was a standing order to use the elevator and no means were provided for giving any sort of signal, and in view of the further fact that appellant testified that he did not appreciate or think of the danger because of his absorption in his work, we are constrained to hold that the question whether he assumed the risk was one for the jury.

The question of negligence of a fellow servant is not involved. The positive duty to furnish a safe place to work and safe appliances is a nondelegable duty of the master. It makes, therefore, not the slightest difference who started the elevator, whether an employee of the respondents or, as suggested by counsel, a delivery man. It must be assumed that, had there been some automatic or other signal system, it would have performed its office or a signal would have been given, no matter who used the elevator.

Nor do we find that the appellant can be charged with contributory negligence as a matter of law. He was using the elevator at the time of his injury for the purpose for which it was intended and in the only manner in which it could be used. There was no evidence that any added precaution on his part could have saved him from the injury. He testified that he looked up but could see nothing to indicate that any one was in the act of starting the elevator. If he was justified in using the elevator at all, there is nothing in the evidence to indicate any lack of care on his part in using it in the only way that it could be used.

Upon the entire record, we are clear that the case was for the jury upon every issue involved. The judgment is reversed, and the cause is remanded for a new trial.

MOUNT, FULLERTON, and CHADWICK, JJ., concur.