[No. 25960. *En Banc.* October 29, 1936.]

A. O. CARUFEL *et al., Respondents,* v. W. P. DAVIS, *Appellant.*[1]

*Edge & Wilson,* for appellant.

*Edward M. Connelly, B. A. Farley,* and *Michael J. Kerley,* for respondents.

GERAGHTY, J.—On the afternoon of Sunday, August 13, 1933, a large Chrysler car, driven by W. P. Davis, plunged through the guardrails of a bridge across the

[1]Reported in 61 P. (2d) 1005.

Spokane river. At the time, A. O. Carufel and his wife, Genevieve, together with their minor son and Vivian Merritt, a minor daughter of Mrs. Carufel, were riding in the car as guests of Davis. The wife of Mr. Davis was also in the car. Mrs. Carufel and her daughter, Vivian Merritt, suffered serious injuries. Mrs. Davis also sustained injuries, from which she died.

The Carufels instituted an action against Davis for injuries sustained by the wife, and another action was brought by Mrs. Carufel, as guardian *ad litem* for her daughter, Vivian. The actions were consolidated for trial below, as well as upon appeal.

The complaints alleged that the plaintiffs were invited guests in the automobile of the defendant, and

"(3) That during said journey from Liberty Lake the said defendant intentionally and continuously drove his automobile at a high and excessive rate of speed, to-wit: between fifty-five and sixty-five miles per hour, and in such a reckless, wanton and careless manner that his car was swaying from one side of the highway to the other, and that he, the said defendant, without any regard whatsoever to the life or limb or safety of the plaintiffs or himself, or his wife, and the other occupants of said automobile, and with an utterly abandoned and depraved spirit of wantonness, did attempt to drive his said automobile upon the Greene Street bridge at such excessive rate of speed, and in such grossly and wantonly, careless and reckless fashion, but because of such wantonly reckless and negligent operation of said automobile, and the extremely excessive rate of speed at which said defendant was wilfully and intentionally operating the same, he, the said defendant, was unable to hold said car in the center of the highway, but drove said vehicle upon the extreme left-hand side of the approach to said bridge, tearing out approximately twenty-five feet of railing on the left-hand side, and continued to drive said vehicle upon the left-hand slanting steel girders which

constitute a part of the upright construction of said bridge, and that after driving up said steel girders a distance of about eight feet, said automobile toppled sideways and fell into the Spokane River, a distance of from thirty-five to forty feet."

The case was tried to a jury. At the close of the plaintiffs' case, the defendant challenged the sufficiency of the evidence and moved for a dismissal, and at the close of all the evidence, again challenged its sufficiency and moved for a dismissal or, in the alternative, for a directed verdict in his favor. Both motions were denied by the court. The jury returned a verdict in favor of the defendant, after which the plaintiffs interposed a motion for new trial. This motion was granted upon specific grounds assigned in the order. The defendant appeals.

As we are of the view that the facts bring the case within the rule announced in *Shea v. Olson,* 185 Wash. 143, 53 P. (2d) 615, affirmed on rehearing *En Banc,* 186 Wash. 700, 59 P. (2d) 1183, it will be unnecessary to discuss the assignments based upon the granting of the motion for new trial.

Appellant assigns as error the denial of his motions for dismissal or directed verdict. This assignment raises the issue of the sufficiency of the evidence to sustain a recovery under chapter 18, Laws of 1933, p. 145 *et seq.* (Rem. Rev. Stat. (Sup.), §§ 6297-1, 6297-2 [P. C. §§ 196-57a, 196-57b].) Briefly summarized, the facts are as follows:

On the Sunday in question, the appellant, Davis, invited Mr. Carufel and family to accompany him to the bathing beach at Liberty lake, some seventeen miles east of Spokane. Mr. Davis and Mr. Carufel had been friends of long standing, and, on several occasions before, the Carufels had ridden with Davis as his guests. Mr. Davis was, at the time, president of a manufactur-

ing concern of which Carufel was an employee. They left Spokane for the lake about noon and, after spending some time at the beach, returned to Spokane, following a route leading to the northeast part of the city, where they resided. This course took them from the lake over a paved highway to the intersection of Mission avenue and Greene street. Greene street is a cutoff to that part of the city in which they lived. The street is unpaved, but graveled or macadamized.

The testimony of the principals in the action was in conflict as to the speed and manner in which the appellant drove the car. The respondent Carufel testified that, from the lake to the Greene street intersection, the appellant drove at a rate varying from fifty to sixty miles an hour, slowing down to make the turns. In making the turn into Greene street, the appellant slowed down to thirty miles and then increased his speed, driving at the rate of forty-five or fifty miles as he entered the bridge, where he seemed to lose control of the car. It swerved first to the right and then to the left, when it went through the railing into the river. He testified that he emphatically cautioned the appellant to driver slower. Mrs. Carufel also testified to the excessive speed and to warnings given by herself and husband. Respondent Carufel further testified that, except as to the excessive speed on the return from the lake, the appellant's condition was normal, and he drove in his usual manner. No intoxicating liquor had been consumed by any member of the party.

The appellant testified that, on leaving the lake for the return trip, he drove part way at a speed of fifty to fifty-five miles an hour; that later he reduced his speed to forty to forty-five miles. This was while driving on the paved highway. After leaving the paved highway and turning into Greene street, he

drove around thirty-five or forty miles an hour. Greene street was quite rough with chuck holes. As he approached the bridge, his speed was about thirty-five miles an hour, and as he entered the bridge, his wheels struck a chuck hole. The car swerved, and he applied his brakes,

" . . . and at the same time there seemed to be something wrong with the car or a tire went out. I heard a tire go out and it started to go to the left. I pulled my steering wheel to the extreme right as far as I possibly could. I was leaning over like this, practically in Mr. Carufel's face while I was pulling the wheel over, but whether the front wheels locked or what happened, I don't know, but the car would not respond at all. It just went right over to the timber."

The appellant denied that the respondents had protested to him about the rate of speed at which he was driving. After the wreck, the respondent Carufel went to the home of appellant and stayed there for some days.

By its verdict, the jury indicated that it believed the evidence of the appellant, rather than that of the respondents.

Wholly disregarding the appellant's testimony, it cannot be said that the evidence, either directly or by inference, warrants a finding that it was the intention of the appellant to drive his car through the railing into the river.

In reviewing the evidence and passing upon appellant's challenge to its sufficiency at the close of respondents' case, the trial court said:

"Of course, to say that a thing is intentional, giving the literal interpretation, would mean that the defendant intended to drive his car off the bridge, which, of course, would be absurd under the circumstances. . . . Nobody believes that he had any intention of doing such a thing, but the jury may reasonably find that the manner of his operation of his car was such that he

should have understood and appreciated that that might be the result, and probably would be.''

In construing chapter 18, Laws of 1933, p. 145 *et seq.* (Rem. Rev. Stat. (Sup.), §§ 6297-1, 6297-2 [P. C. §§ 196-57a, 196-57b]) the court, in *Shea v. Olson, supra,* said:

''When the legislature enacted the 1933 statute, it did so with full knowledge of the gross negligence rule and its effect. Obviously, the legislature concluded to limit still further the liability of owners and operators of motor vehicles to invited guests. Instead of making such liability depend upon gross negligence, or the absence of slight care, the legislature withdrew the question of negligence altogether and limited the liability to cases where the owner or operator purposely caused a wreck or disaster, with consequent injuries to the guest.''

Under no view of the evidence in this case can it be said that the appellant intentionally caused the wreck or disaster, as a consequence of which the respondents suffered the injuries sued upon. Indeed, this view seems to have been accepted by counsel for the respondents, for their able brief was devoted wholly to an attack on the opinion in *Shea v. Olson, supra.* It is to be noted, also, that paragraph 3 of the complaint, quoted above, did not allege that it was the intention of the appellant to injure the respondent, but, rather, that because of the wantonly reckless and negligent manner in which he drove the car and the excessive rate of speed, ''he, the said defendant, was unable to hold said car in the center of the highway,'' thus grounding the cause of action upon allegations amounting in effect to no more than gross negligence.

The order appealed from is reversed, and the cause remanded to the trial court with direction to dismiss.

MAIN, MITCHELL, TOLMAN, HOLCOMB, BEALS, BLAKE, and STEINERT, JJ., concur.

MILLARD, C. J. (concurring)—I concur because this case is governed by our opinion in *Shea v. Olson, supra,* an opinion which I still deem unsound.