[No. 39725.    En Banc.    May 28, 1970.]

MYRTLE SORENSEN, *as Administratrix, Appellant,* v. THE ESTATE OF MARJORIE McDONALD *et al., Respondents.*†

*Guttormsen, Scholfield, Willits & Ager,* by *Frank D. Howard,* and *Shannon Stafford,* for appellant.

*Ferguson & Burdell,* by *W. Wesselhoeft,* and *G. E. Craig Doupe,* for respondents.

HAMILTON, J.—On October 25, 1964, Mrs. Clara Smith and Mrs. Marjorie D. McDonald were killed when the automobile in which they were riding overturned. The administratrix of the estate of Clara Smith instituted this suit

*Reported in 469 P.2d 547.
†Reported in 470 P.2d 206.

against the estate of Marjorie McDonald seeking damages for the death of Mrs. Smith, alleging that her death was caused by tortious conduct on the part of Mrs. McDonald as driver of the automobile involved. The defendant's answer as ultimately amended set forth five affirmative defenses: (1) That at the time of the accident Mrs. Smith was the driver of the automobile and it was her negligence which caused the accident; (2) that if Mrs. Smith was not operating the automobile she was a guest passenger within the contemplation of the host-guest statute, RCW 46.08.080; (3) that Mrs. Smith was contributorially negligent; (4) that Mrs. Smith assumed the risk of injury; and (5) that Mrs. Smith's death was caused or contributed to by a reckless disregard for her own safety.

Following trial, the jury rendered a verdict for the defendant. In response to special interrogatories, the jury found that Mrs. McDonald was the driver of the car at the time of the accident, that she was intoxicated and grossly negligent, and that her guest passenger, Mrs. Smith, was contributorially negligent. Judgment was rendered upon the verdict and plaintiff appeals.

The evidence adduced at trial establishes the following course of events leading up to the fatal accident:

At about 9 p.m., on October 24, 1964, Mrs. McDonald, a divorcee, left her place of employment in her automobile, a white 1960 Chevrolet sedan, and drove to her residence in Seattle, Washington, where she picked up her young son and loaded some sleeping bags into the car. Thereafter, and by prearrangement, she drove to the home of her friend, Mrs. Smith, also a divorcee, where she picked up Mrs. Smith and her young son and the four of them left for the home of Mrs. McDonald's mother in the Bremerton area, arriving there about 11 p.m. After a short time, the two boys went to bed; however, the two mothers continued to visit, play records, watch television and, to some extent, drink with Mrs. McDonald's relatives until approximately 1 a.m., when they left, ostensibly to visit some of Mrs. Smith's relatives in Bremerton. Neither woman appeared to have been drinking when they first arrived at the home of

Mrs. McDonald's mother and neither appeared to be intoxicated when they left, the evidence in this respect being that there had been an unopened bottle of vodka at Mrs. Smith's home and that they had only one or two drinks of intoxicants with Mrs. McDonald's relatives. The evidence is in conflict and inconclusive as to the source of the drinks consumed at the Bremerton residence, *i.e.*, whether they came from Mrs. Smith's bottle of vodka or from a bottle of vodka purchased by Mrs. McDonald's relatives.

The accident resulting in the deaths of the women occurred at 1:30 a.m., on October 25, 1964. Although there was a time change at 2 a.m. on that date the record is indecisive as to whether the accident occurred at 1:30 a.m. daylight time or 1:30 a.m. standard time. The former would be only about 30 minutes after the women left the residence of Mrs. McDonald's mother, and the latter would be about an hour and 30 minutes after they left.

Shortly before and some distance from the accident, the McDonald Chevrolet with the two women in it was observed proceeding south on the Bremerton-Belfair highway by one Joe Snipes, then a sailor in the United States Navy, who, with a shipmate, was traveling south on the highway in a 1957 Oldsmobile. The Snipes vehicle passed the McDonald vehicle at a normal rate of speed when both were on a 4-lane portion of the highway. After reaching and passing a point where the highway narrowed to two lanes, the Snipes vehicle, traveling at about the speed limit of 60 miles an hour, was overtaken and passed by the McDonald vehicle. As this pass was made, Mr. Snipes noted that the woman on the passenger side of the vehicle looked over at him and smiled, following which the McDonald vehicle accelerated and continued to gain momentum as it moved ahead. The Snipes vehicle thereupon followed, overtook, and, after being initially blocked by a maneuver of the McDonald vehicle, ultimately passed at a time when the McDonald vehicle was traveling between 90 and 95 miles an hour. After this pass, the Snipes vehicle, with the McDonald vehicle attempting to follow, accelerated to approximately 120 miles an hour. The Snipes vehicle gradually

drew away from the McDonald vehicle and proceeded on to Belfair where it stopped to await the McDonald automobile.

In the meantime, as the McDonald Chevrolet rounded a slight curve in the highway at an estimated speed of 100 miles an hour it began to skid. After skidding for 193 feet it crossed the center line, sideswiped a northbound vehicle, skidded broadside and sideways another 130 to 190 feet in the northbound lane and on the shoulder of the road, struck and started up an abutting 15-foot embankment, overturned and slid an additional 90 feet coming to rest upside down in the southbound lane of the highway. The door on the passenger side of the vehicle was closed. The door on the driver's side was open or gone. Mrs. Smith's body was found in the car. Mrs. McDonald's body was discovered a short distance off the highway to the right rear of the Chevrolet's original direction of travel.

Blood tests indicated Mrs. Smith had a 0.10 and Mrs. McDonald a 0.16 per cent blood alcohol reading. Expert witnesses opined these readings projected an individual intake of alcoholic spirits equivalent to approximately 6 ounces of 80-proof vodka and that Mrs. McDonald's reading reflected a fair degree of intoxication. The variation in the readings was attributed to the difference in the size and weight of the two women.

Both of the women were licensed automobile drivers. Mrs. McDonald was described as a considerate driver, who would slow down if so requested by a passenger. Mrs. Smith was characterized as a driver who usually "went the limit," but was not unnecessarily adventuresome. Each was classed as a person who indulged in intoxicants only on a social basis; however, the evidence indicated Mrs. McDonald had two previous driving incidents involving alcohol.

The highway over which the McDonald and Snipes vehicles pursued one another was fairly straight and reasonably level. The distance traversed in the maneuvers up to the scene of the accident was approximately 6 or 7 miles. Traffic was fairly light, for the racing vehicles passed only

three southbound vehicles in the course of their contest. The drivers of the three overtaken vehicles gave varying, though progressively increasing, estimates of the rates of speed involved at the time they were passed.

The evidence is without substantial dispute and amply sustains the jury's findings to the effect that Mrs. McDonald was the driver of the automobile, that she was intoxicated and that she was grossly negligent in the operation of her vehicle. Likewise, we deem the evidence and the reasonable inferences therefrom sufficient to warrant submission of—and to sustain the jury's finding upon—the issue of contributory negligence on the part of Mrs. Smith as a passenger. We find no merit in plaintiff's assignments of error directed to the trial court's instructions in this respect. Plaintiff, however, principally assigns error to the trial court's failure to give proposed instructions concerning allegations of wanton misconduct on the part of Mrs. McDonald. In this vein, plaintiff argues that wanton misconduct constitutes a basis for recovery under the host-guest statute, RCW 46.08.080, and that Mrs. McDonald's actions as the driver amounted to wanton misconduct as a matter of law or, at least, created an issue calling for a determination by the jury. Defendant, although earnestly disputing plaintiff's contentions in this regard, alternatively, and in the event of a new trial, assigns error to the trial court's failure to submit proposed instructions concerning contributory wanton misconduct and/or volenti non fit injuria (assumption of the risk) on the part of Mrs. Smith.

We agree with plaintiff's contention that Mrs. McDonald's driving actions amounted to wanton misconduct as a matter of law and with defendant's alternative thesis that the defense of contributory wanton misconduct should have been submitted to the jury.

Such being our view, we turn first to the question of whether wanton misconduct on the part of a host driver gives rise to a cause of action on behalf of an invited guest passenger injured as a proximate result of such misconduct

under the terms of RCW 46.08.080, the host-guest statute. This statute in pertinent part provides:

No person transported by the owner or operator of a motor vehicle as an invited guest or licensee, without payment for such transportation, shall have cause of action for damages against such owner or operator for injuries, death or loss, in case of accident, *unless the accident was intentional on the part of the owner or operator, or the result of said owner's or operator's gross negligence or intoxication,* . . .

(Italics ours.)

The purpose and effect of the host-guest statute in its present form, among others, is to immunize a host driver from liability to an invited guest passenger for injuries arising out of the host's ordinary negligence. *Abel v. Firs Bible & Missionary Conference,* 57 Wn.2d 853, 360 P.2d 356 (1961). That immunity disappears, however, and potential common-law tort liability reasserts itself when tortious conduct on the part of a host driver reaches the level of gross negligence or a guest passenger's injuries are the result of the host driver's intoxication or perpetration of an intentional accident. *Osborn v. Chapman,* 62 Wn.2d 495, 384 P.2d 117 (1963); *Nist v. Tudor,* 67 Wn.2d 322, 407 P.2d 798 (1965).

Intentional accident, as that term is utilized in our host-guest statute, has been construed as meaning an injurious occurrence purposely brought about by a host driver deliberately intent upon causing injury or the destruction of property. *Shea v. Olson,* 185 Wash. 143, 53 P.2d 615, 111 A.L.R. 998, *aff'd on rehearing,* 186 Wash. 700, 59 P.2d 1183 (1936); *Carufel v. Davis,* 188 Wash. 156, 61 P.2d 1005 (1936); *Lassiter v. Shell Oil Co.,* 188 Wash. 371, 62 P.2d 1096 (1936); *Parker v. Taylor,* 196 Wash. 22, 81 P.2d 806 (1938); *Taylor v. Taug,* 17 Wn.2d 533, 136 P.2d 176 (1943); *Upchurch v. Hubbard,* 29 Wn.2d 559, 188 P.2d 82 (1947).

Gross negligence, as that phrase is used in the host-guest statute, has been defined as "negligence substantially and appreciably greater than ordinary negligence," or the failure to exercise a degree of care "substantially or apprecia-

bly less than the quantum of care inhering in ordinary negligence." *Nist v. Tudor, supra.*

■ Neither term—intentional accident nor gross negligence—has been equated to nor deemed the equivalent of wanton misconduct as that characterization of tortious conduct is utilized in our cases. *Shea v. Olson, supra; Crowley v. Barto,* 59 Wn.2d 280, 367 P.2d 828 (1962). In *Adkisson v. Seattle,* 42 Wn.2d 676, 258 P.2d 461 (1953), we emphasized that wanton misconduct was not negligence because the behavior embraced within the concept involves intent rather than inadvertence, is positive rather than negative and places the actor in a class with the willful doer of wrong. We went on to define the conduct contemplated as (at page 687)

> the intentional doing of an act, or intentional failure to do an act, in reckless disregard of the consequences, and under such surrounding circumstances and conditions that a reasonable man would know, or have reason to know, that such conduct would, in a high degree of probability, result in substantial harm to another.

It is thus readily apparent from our treatment of the concepts of intentional accident, wanton misconduct and gross negligence, yet short of premeditated and deliberate conduct contemplates intentional conduct on the part of a host driver which is more reckless and dangerous than gross negligence, yet short of premeditated and deliberate harm. Given these premises then, it would indeed be incongruous to authorize recovery on the part of an injured guest passenger for the gross negligence of a host driver and refuse to permit a claim predicated upon a host driver's wanton misconduct. If the veil of immunity provided by the host-guest statute falls with proof of gross negligence certainly it should remain lowered to permit recovery upon proof of wanton misconduct.

We hold, therefore, that within the contemplation of our host-guest statute an injured guest passenger may assert and base a cause of action against the host driver upon a theory of wanton misconduct. Any language in the case of

*Osborn v. Chapman, supra,* to the contrary is expressly overruled.

In the instant case, the evidence, without significant conflict, establishes that Mrs. McDonald, as the host driver, with a blood alcohol reading of 0.16 per cent,[1] deliberately engaged in a race with the Snipes vehicle for a distance of some 6 or 7 miles, in the nighttime, on a 2-lane state highway upon which other automobiles were traveling, progressively attained and maintained over the distance involved speeds upwards of 100 miles an hour, and in traversing a modest curve in the road at an estimated speed of 100 miles an hour, careened out of control into an oncoming car and overturned, proximately causing the death of Mrs. Smith. Upon these facts it would be naive and unrealistic to reach any other conclusion than that Mrs. McDonald, in reckless disregard of the consequences, purposely drove her automobile at excessive and unlawful speeds under such circumstances and conditions as would put a reasonable driver on notice that such conduct would, in a high degree of probability, result in substantial harm to another. In our view Mrs. McDonald's actions amounted to wanton misconduct as a matter of law, and the jury should have been so instructed.

We turn now to defendant's alternative assignments of error. In this respect, it is defendant's contention that should plaintiff be accorded a new trial, then defendant should be entitled to have the jury instructed upon the defenses of contributory wanton misconduct and volenti non fit injuria.

In *Adkisson v. Seattle, supra,* we held that, since wanton misconduct is not negligence, contributory negligence on the part of a plaintiff is not a defense to an action based

---

[1]Laws of 1961, ch. 12, 46.56.010, p. 379, in effect at the time of the accident legislatively created a presumption that a person with a blood alcohol reading of 0.15 per cent or more was under the influence of intoxicating liquor.

Since, and by way of Laws of 1969, ch. 1, § 3, p. 4 (Initiative Measure No. 242, § 3) (RCW 46.61.506), the statute has erected the same presumption from a blood alcohol reading of 0.10 per cent or more.

upon a defendant's wanton misconduct. We pointed out, however, that wanton misconduct, as distinguished from negligence, on the part of a plaintiff which contributes to the plaintiff's injury will prevent recovery notwithstanding the defendant's wanton misconduct. Other authorities recognize and hold that the principle of volenti non fit injuria, often referred to as assumption of the risk, may also constitute a defense to an action predicated upon wanton misconduct, and, under appropriate circumstances, both may be asserted and become proper defenses. Restatement (Second) of Torts §§ 482, 496A, 502, 503 (1965); W. Prosser, Torts § 67 (3d ed. 1964).

We have no quarrel with the proposition that under an appropriate and varying set of facts, both volenti non fit injuria and contributory wanton misconduct might become distinct and severable defenses to alleged wanton misconduct on the part of a defendant, and one or both be properly submitted to the jury for determination. Where, however, the respective defenses overlap to the extent and in the sense that the applicability of each derives from identical evidentiary circumstances, that is, where an alleged voluntary exposure is to a patently unreasonable risk of great harm, and the circumstances involved are virtually undisputed and equally tend to evince, on the plaintiff's part, a voluntary, reckless assumption of the enhanced danger as well as an active acquiescence or participation in the defendant's risk-creating and injury-causing misconduct, then it is our view that, for all practical and procedural purposes, the two defenses should be deemed to have merged, for the plaintiff's assumption of the risk under such circumstances can be readily embraced within and expressed under the concept of contributory wanton misconduct. To submit both concepts to the jury under such a set of circumstances would tend toward duplicity and over-emphasis as well as confusion, and to force upon a defendant and the trial court a technical choice between the two with the attendant risk of appealable error would serve no significant public purpose.

In the instant case, the evidence concerning the blood

alcohol readings of Mrs. McDonald and Mrs. Smith, their embarkation after 1 a.m. upon an undisclosed trip for an undisclosed purpose away from the locale of their respective relatives, Mrs. Smith's smile directed to the two male occupants of the Snipes vehicle together with Mrs. McDonald's contemporaneous acceleration of her vehicle as they passed that automobile, the two men's acknowledgment of and reaction to these actions, the race that ensued, the high speeds attained and maintained over a considerable distance, Mrs. McDonald's tendency to heed driving admonitions of passengers riding with her, if given, and the obvious and unreasonable hazards inherent in racing at extremely high speeds in the nighttime over a 2-lane traveled highway, taken together, present sufficient and substantial circumstances from which a jury would be entitled to infer and conclude that, in a reckless disregard of her own safety, Mrs. Smith voluntarily and willingly rode with a host driver she knew had been drinking and purposely contributed to and participated with that driver in inviting and engaging in a high speed race with another car under such circumstances as to render the unreasonable hazards obvious and the conduct such as would, in a high degree of probability, result in great harm.

Since the foregoing circumstances stand virtually undisputed, and when taken in combination the inferences therefrom point equally to volenti non fit injuria and contributory wanton misconduct, the two defenses merge into the concept of contributory wanton misconduct. Accordingly, defendant would be entitled to have that issue submitted to the jury.

The verdict of the jury in this case upon the issues of driver-passenger relationship, intoxication, gross negligence, and contributory negligence, based, as such determinations are, upon substantial evidence and correct instructions, is affirmed. The cause is remanded for new trial upon the issues of contributory wanton misconduct and damages. Costs will abide the result of the new trial.

HUNTER, C. J., FINLEY, ROSELLINI, HALE, NEILL, and MCGOVERN, JJ., concur.