[No. 42659.    En Banc.    November 8, 1973.]

DANNY A. LYONS, *Petitioner*, v. REDDING CONSTRUCTION COMPANY, *Respondent.*

*Critchlow, Williams, Ryals & Schuster,* by *David E. Williams,* for petitioner.

*Olson & Olson,* by *Roger L. Olson,* for respondent.

FINLEY, J.—Danny Lyons has petitioned the Supreme Court to review a decision of the Court of Appeals affirming a jury instruction of the Franklin County Superior Court applying the maxim volenti non fit injuria in a personal injury action.

Danny Lyons, an electrician, was employed by an electrical subcontractor on a construction site in Connell, Washington. On December 9, 1969, Lyons was standing on or near a foundation footing observing the work of a "cater-

pillar" tractor of respondent-prime contractor spreading gravel with its front blade. A foreman of respondent operating the tractor was smoothing the gravel by repeatedly traversing a route in an entranceway abutting the foundation footing where Danny Lyons was standing. Although there is conflicting testimony, the record indicates that the tractor, upon one of its passes, either hit Danny Lyons or forced him to step back causing him to fall over the foundation footing. Liability in damages for the injuries resulting from the fall is the gist of the instant cause of action.

At trial, over the objection of petitioner, the trial judge instructed the jury on the defense of volenti non fit injuria, as indicated above. A jury verdict for the respondent construction company was affirmed by the Court of Appeals. The sole issue for our consideration is whether the doctrine of volenti non fit injuria has continuing viability in the common law of the State of Washington.

This court heretofore in a number of cases has regarded the maxim, volenti non fit injuria ("damage suffered by consent is not a cause of action," H. Broom, *Legal Maxims* 181 (10th ed. R. Kersley 1939)), as separate and distinct from the doctrine of assumption of the risk. *Hogenson v. Service Armament Co.*, 77 Wn.2d 209, 461 P.2d 311 (1969); *Detrick v. Garretson Packing Co.*, 73 Wn.2d 804, 440 P.2d 834 (1968); *Walsh v. West Coast Coal Mines*, 31 Wn.2d 396, 197 P.2d 233 (1948). This distinction has caused some degree of confusion and apparently some consternation amongst the commentators. *See* W. Prosser, *The Law of Torts* § 68 (4th ed. 1971); Note, 41 Wash. L. Rev. 585 (1966). Professor Prosser suggests that the maxim should be subsumed under the generic rubric, *assumption of the risk*. In his view, the differentiation in our decisions is a "distinction without a difference." Prosser, *supra* at 440. Our use of the maxim, however, has not been merely a sophomoric exercise in tautology, but a useful juristic device to pinpoint and distinguish the voluntary assumption of a known risk from the waning doctrine of assumption of

the risk. *Hogenson v. Service Armament Co., supra.* In view of the conclusions we reach in this case, continued differentiation of *"volenti"* as a defense *wholly distinct* from assumption of the risk becomes unnecessary.

Volenti non fit injuria had its original application in Roman law by validating the process by which a free, citizen sold himself into slavery. J. Salmond, *The Law of Torts* § 185, at 664 (15th ed. R. Heuston 1969). From this obscure beginning, the doctrine of assumption of the risk found its way into the common law with its first notable expression in *Priestley v. Fowler,* 150 Eng. Rep. 1030 (Ex. 1837). While addressing himself to the domestic roles of chambermaids, coachmen, and footmen, Lord Abinger, C.B., laid the doctrinal foundation[1] that would be interposed to defeat in the common-law courts the claims of countless injured workers in the ensuing industrial revolution. It was also in *Priestley v. Fowler, supra,* that Lord Abinger created the fellow-servant exception to the vicarious liability of the master for the negligent acts of his servant. Thus, when an employee was injured by an act of his fellow worker, the employer was relieved of liability. In 1880, parliament sought to remove this harsh result by the passage of the Employer's Liability Act, 43 & 44 Vict., c. 42. Nonetheless, the English courts shortly thereafter narrowly construed the statute to allow an employee to contractually waive the liability of the employer under the guise of an invocation of the maxim, *i.e.,* volenti non fit injuria. *Thomas v. Quartermaine,* [1887] 18 Q.B.D. 685. In the throes of the great economic upheavals occurring during the industrialization of England, the English common-law courts assumed the

---

[1]"[T]o allow this sort of action to prevail would be an encouragement to the servant to omit that diligence and caution which he is in duty bound to exercise on the behalf of his master, to protect him against the misconduct or negligence of others who serve him, and which diligence and caution, while they protect the master, are a much better security against any injury the servant may sustain by the negligence of others engaged under the same master, than any recourse against his master for damages could possibly afford." *Priestley v. Fowler, supra* at 1033.

attitude that each man was his own master and, therefore, need not necessarily choose to be employed under conditions which might expose him to the occupational risks attendant to a particular vocation. If a workman were to engage in a hazardous occupation, the courts of the day assumed or envisioned his wages would be sufficiently higher to somehow compensate for any potential danger. Gow, *The Defence of Volenti Non Fit Iniuria*, 61 Jurid. Rev. 37 (1949); Warren, *Volenti Non Fit Injuria in Actions of Negligence*, 8 Harv. L. Rev. 457 (1895). .

This individualistic spirit of the common law was nowhere more evident than in the early American decision in *Farwell v. Boston & W.R.R.*, 45 Mass. (4 Metc.) 49 (1842). In a refinement of the holding in *Priestley v. Fowler, supra,* Chief Justice Shaw of the Supreme Judicial Court of Massachusetts found a workmen's contract of employment to impliedly include the risks of his profession. The *Farwell* case indicated the rationale for placing the burden of injury upon the employee, as one grounded in public policy emphasizing that (1) the chance of injury is reflected in compensation; (2) the employee is as likely to know the dangers as is the employer; (3) noncompensation of injuries tends to make workmen more careful.

Judicial protectivism of industrial growth was never more apparent than in *Tuttle v. Detroit, G.H. & M. Ry.*, 122 U.S. 189, 196, 30 L. Ed. 1114, 7 S. Ct. 1166 (1886). Therein the United States Supreme Court stated that nonliability of the employer for such injuries was "a rule of public policy, inasmuch as an opposite doctrine would not only subject employers to unreasonable and often ruinous responsibilities, thereby embarrassing all branches of business." *See* Pound, *The Economic Interpretation and the Law of Torts,* 53 Harv. L. Rev. 365 (1940).

Judicial recognition that industry should not be nurtured at the expense of human suffering was not forthcoming until relatively recently. In *Tiller v. Atlantic Coast Line R.R.*, 318 U.S. 54, 58-59, 87 L. Ed. 610, 63 S. Ct. 444, 143

A.L.R. 967 (1942), Mr. Justice Black, writing for a unanimous court, stated

> [a]ssumption of risk is a judicially created rule which was developed in response to the general impulse of common law courts at the beginning of [the industrial revolution] . . . to insulate the employer as much as possible from bearing the "human overhead" which is an inevitable part of the cost—to someone—of the doing of industrialized business."

A more eloquent, if not stronger, indictment of the doctrine may be found in the concurring opinion of Mr. Justice Frankfurter:

> The phrase "assumption of risk" is an excellent illustration of the extent to which uncritical use of words bedevils the law. A phrase begins life as a literary expression; its felicity leads to its lazy repetition; and repetition soon establishes it as a legal formula, undiscriminatingly used to express different and sometimes contradictory ideas. Thus, in the setting of one set of circumstances, "assumption of risk" has been used as a shorthand way of saying that although an employer may have violated the duty of care which he owed his employee, he could nevertheless escape liability for damages resulting from his negligence if the employee, by accepting or continuing in the employment with "notice" of such negligence, "assumed the risk." In such situations "assumption of risk" is a defense which enables a negligent employer to defeat recovery against him.

*Tiller v. Atlantic Coast Line R.R., supra* at 68-69.

Since its humble beginnings in *Priestley v. Fowler, supra,* the doctrine of assumption of risk became enmeshed in the fabric of virtually every specie of negligence law. *See* 2 F. Harper & F. James, *The Law of Torts* § 21.1 (1956). Judicial treatment of the doctrine has, however, come full circle from the unquestioning "lazy repetition" of the early common law. Legal commentators have long urged the abolition of assumption of the risk. *See* F. Harper & F. James, *The Law of Torts* § 21.8; James, *Assumption of Risk: Unhappy Reincarnation,* 78 Yale L.J. 185 (1968);

Bohlen, *Voluntary Assumption of Risk*, 20 Harv. L. Rev. 14 (1906).

In *Meistrich v. Casino Arena Attractions, Inc.*, 31 N.J. 44, 155 A.2d 90 (1959), the Supreme Court of New Jersey initiated the trend toward abolition of the defense. A succession of other states have followed, and in varying degrees have abrogated the doctrine as a separate defense apart from contributory negligence. For an inventory of jurisdictions restricting or abolishing the defense see Prosser, *supra* at 454 nn.44-52 and accompanying text and *Rosenau v. Estherville*, 199 N.W.2d 125, 131 (Iowa 1972). Commenting on the trend toward abolition, Professor Prosser points out that total abolition of the defense may muddy the waters even further. Prosser suggests that in cases

> l[w]here the plaintiff acts unreasonably in making his choice, it is said that there is merely one form of contributory negligence, which is certainly true; and from this it is argued that there is, or should be, no distinction between the two defenses, and that there is only useless and confusing ,duplication. But this is a distinctive kind of contributory negligence, in which the plaintiff knows the risk and voluntarily accepts it [a situation to which this court has applied the maxim, volenti non fit injuria]; and it has been held to differ from contributory negligence which merely fails to discover the danger in several minor respects. Thus assumption of risk is governed by the subjective standard of the plaintiff himself, whereas contributory negligence is measured by the objective standard of the reasonable man. Assumption of risk, whether or not it is called contributory negligence, will bar recovery in an action founded on strict liability where the plaintiff's ordinary negligence may not. The plaintiff may assume the risk where the conduct of the defendant is wilful, wanton or reckless, and his ordinary negligence is not a defense; and while there will certainly be many cases in which the encountering of a known high degree of danger will itself be wilful, wanton and reckless, and so a bar under either theory, there will be others where it is not.

(Footnotes omitted.) Prosser, *supra* at 456.

■ Prosser would avoid the regrettable consequence of promoting an amorphous, all-inclusive defense of contributory negligence to cover all cases by retaining the defense in instances of *express consent*, and situations where the plaintiff has assumed a risk with knowledge of willful, wanton and reckless behavior of the defendant, and furthermore by eliminating the doctrine where it overlaps or coincides with contributory negligence. This approach was recently adopted by the Iowa Supreme Court in *Rosenau v. Estherville*, 199 N.W.2d 125 (Iowa 1972), *noted.* 58 Iowa L. Rev. 421 (1972). Thus the Iowa court appears to be the first to temper its limitation of the doctrine with *a retained applicability* in those instances described by Prosser. *E.g., compare Rosenau with Williamson v. Smith*, 83 N.M. 336, 491 P.2d 1147 (1971).

Historically, in our own cases, the Washington court has sought to limit the application of both assumption of the risk and volenti. *Hull v. Davenport*, 93 Wash. 16, 159 P. 1072 (1916). *See Bailey v. Mukilteo Lumber Co.*, 44 Wash. 581, 87 P. 819 (1906); *Columbia & P.S.R.R. v. Hawthorne*, 3 Wash. Terr. 353, 19 P. 25 (1888), *rev'd on other grounds*, 144 U.S. 202, 36 L. Ed. 405, 12 S. Ct. 591 (1892).

We, however, have continued to approve the application of the volenti maxim in, heretofore, seemingly appropriate circumstances. *Detrick v. Garretson Packing Co., supra; Ewer v. Johnson*, 44 Wn.2d 746, 270 P.2d 813 (1954); *Walsh v. West Coast Coal Mines, supra.* Unfortunately, our limitation of the doctrine of assumption of the risk in *Siragusa v. Swedish Hosp.*, 60 Wn.2d 310, 373 P.2d 767 (1962), discussed *infra*, has had the concomitant effect of encouraging the invocation of volenti as a near, but inappropriate, substitute. *See Hogenson v. Service Armament Co., supra; Regan v. Seattle*, 76 Wn.2d 501, 458 P.2d 12 (1969); *Carabba v. Anacortes School Dist. 103*, 72 Wn.2d 939, 435 P.2d 936 (1967); *Martin v. Kidwiler*, 71 Wn.2d 47, 426 P.2d 489 (1967). *Cf. Porter v. Lee*, 7 Wn. App. 715, 502 P.2d 488 (1972); *Wood v. Postelthwaite*, 6 Wn. App. 885, 496 P.2d

988 (1972), *aff'd on other grounds,* 82 Wn.2d 387, 510 P.2d 1109 (1973); *Runnings v. Ford Motor Co.,* 461 F.2d 1145 (9th Cir. 1972).

In recent years we have recognized the anomaly of perpetuating a doctrine whose historical purpose is questionable and whose contemporary application is dubious. In *Siragusa v. Swedish Hosp.,* 60 Wn.2d 310, 319, 373 P.2d 767 (1962), *noted* 16 Vand. L. Rev. 465 (1963), 40 U. Det. L.J. 273 (1962), after an extensive review of the doctrine, we addressed assumption of risk in the context of the master-servant relationship:

> The time has now come . . . to state unqualifiedly that an employer has a duty to his employees to exercise reasonable care to furnish them with a reasonably safe place to work. We now hold that if an employer negligently fails in this duty, he may not assert, as a defense to an action based upon such a breach of duty, that the injured employee is barred from recovery merely because he was aware or should have known of the dangerous condition negligently created or maintained. However, if the employee's voluntary exposure to the risk is unreasonable under the circumstances, he will be barred from recovery because of his contributory negligence.

*See Browning v. Ward,* 70 Wn.2d 45, 422 P.2d 12 (1966). The following year the defense was abolished in a relationship other than that of master-servant in *Engen v. Arnold,* 61 Wn.2d 641, 379 P.2d 990 (1963). The doctrine was further restricted in *Feigenbaum v. Brink,* 66 Wn.2d 125, 401 P.2d 642 (1965), wherein the reasoning of the *Siragusa* and *Engen* cases was found to control in a situation in which a landlord had not maintained rental premises in a reasonably safe condition. Thus, assumption of the risk has been extremely limited by prior Washington decisions in which the defense of contributory negligence was available. *Cf.* Smith, *The Last Days of Assumption of the Risk,* 5 Gonzaga L. Rev. 190 (1970).

With the foregoing legal history in mind, we think the defense of volenti non fit injuria (as previously construed

under Washington case law) is singularly inapplicable to the instant case.

The distinction between the doctrine of assumption of risk and the principle involved in the maxim *volenti non fit injuria,* as applied by the courts, is that the "doctrine" applies only to cases arising out of the relationship of master and servant, or at least to cases involving a contractual relationship, whereas the "maxim" applies, in proper cases, independently of any contract relation.

As stated in *Gover v. Central Vermont R. Co.,* [96 Vt. 208, 118 A. 874 (1922)],

"In the primary and narrower sense the doctrine [assumption of risk] can apply only when a contractual relation exists, ordinarily that of master and servant. But in the broader sense it may apply when no relation by contract exists within the limits of the maxim *'volenti non fit injuria.'* "

*Walsh v. West Coast Coal Mines,* 31 Wn.2d 396, 408, 197 P.2d 233 (1948). The reasoning underlying the application of assumption of risk to the master-servant relationship rests in the contractual aspect of that relationship and in the unique concomitant duties owed by an employer to an employee, in contradistinction to the duties arising simply from negligent conduct to which we have applied the volenti maxim.

In *Greenleaf v. Puget Sound Bridge & Dredging Co.,* 58 Wn.2d 647, 364 P.2d 796 (1961), we held that a general contractor owes an equal duty of care to his employees and the employees of a subcontractor. We are convinced that *Siragusa* and the *Engen* case are controlling in this appeal. Appellant Lyons stood in the shoes of an employee of respondent, Redding Construction Co. As we have noted, *Siragusa* eliminated the defense of assumption of the risk in the master-servant context while *Engen* abolished the doctrine in other relationships. Thus the defense of assumption of the risk is not available, and furthermore we are convinced the maxim, volenti non fit injuria, is inappropriate and inapplicable.

Without some further elucidation, however, the defenses,

assumption of the risk and volenti non fit injuria, could continue to be invoked in conjunction with the affirmative defense of contributory negligence. We are persuaded that the analysis of Professor Prosser as recently adopted by the Iowa Supreme Court in *Rosenau v. Estherville, supra,* provides a sound approach and a better one. Our review of the history and function of assumption of risk leads us to the conclusion that the maxim, volenti non fit injuria, and the doctrine, assumption of risk, should have no continued existence as separate defenses where the defense of contributory negligence is now available. The doctrine, assumption of risk, will, in the Prosser idiom, have *retained validity* where there is an express agreement to assume, or the plaintiff has assumed a risk with knowledge of willful, wanton, or reckless negligence of the defendant. *See, e.g., Sorensen v. Estate of McDonald,* 78 Wn.2d 103, 470 P.2d 206 (1970).

The decision reached here today has been long-aborning. Somewhat ironically, its effects will be short-lived. The assumption of risk in special and limited situations or contributory negligence on the part of a plaintiff has the effect of denying all recovery regardless of degree of fault. But this *all or nothing result* will be abandoned or changed on April 1, 1974, because the Washington state legislature has recently enacted a comparative negligence statute which provides:

> Contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages caused by negligence resulting in death or in injury to person or property, but any damages allowed shall be diminished in proportion to the percentage of negligence attributable to the party recovering.

Laws of 1973, 1st Ex. Sess., ch. 138, § 1, p. 949. The statute, which appears to be patterned after a similar Mississippi provision (Miss. Code Ann. § 11-7-15 (1972)), will allow recovery by a party at fault, reduced by the degree of comparative negligence of the plaintiff. *See also Jones v. Hoffman,*

272 So. 2d 529 (Fla. 1973); Henry, *Why Not Comparative Negligence in Washington?* 5 Gonzaga L. Rev. 1 (1969).

Our limited retention of the doctrine of assumption of risk is, of course, a form of contributory negligence. Adoption of the standard of comparative negligence is necessarily accompanied by a more flexible weighing of the relative fault attributable to each party. A concomitant effect of this more delicate apportionment of damages will be the elimination of the need for the assumption of the risk doctrine. Thus, the calculus of balancing the relative measurements of fault inevitably incorporates the degree to which the plaintiff assumed the risk. Accordingly, it has been held the effect of the comparative negligence standard shall be to completely abrogate the assumption of risk doctrine as known and applied heretofore.[2]

Returning to the instant case, we find it was error for the trial judge to instruct the jury on the maxim, volenti non fit injuria. There is conflicting evidence regarding appellant's contributory negligence, if any. The determination of whether Mr. Lyon's injuries are the product of horseplay or other negligence on the part of respondent's employee and the possibility that appellant may have been contributorially negligent are questions to be left to a jury.

The trial court and the decision of the Court of Appeals are reversed and the cause is remanded for a new trial with directions to proceed in accordance with the views expressed herein. Costs will abide the final determination of this case.

HALE, C.J., and ROSELLINI, HUNTER, HAMILTON, STAFFORD, WRIGHT, UTTER, and BRACHTENBACH, JJ., concur.

---

[2] A similar result has been reached in the interpretation of Wisconsin's comparative negligence statute. *McConville v. State Farm Mut. Auto. Ins. Co.,* 15 Wis. 2d 374, 113 N.W.2d 14 (1962); *Colson v. Rule,* 15 Wis. 2d 387, 113 N.W.2d 21 (1962). *Cf.* Miss. Code Ann. § 11-7-19 (1972) (assumption of risk abolished in the employer-employee relationship).