[No. 769-3.    Division Three.    May 2, 1974.]

WESTERN PACKING COMPANY, INC., *Appellant*, v. WILLIAM J. VISSER *et al., Respondents.*

*Robert J. Willis* (of *Willis, McArdle & Dohn*), for appellant.

*Norman R. Nashem, Jr.* (of *Nashem, Prediletto, Brooks & Schussler*), for respondents.

MUNSON, J.—Plaintiff, Western Packing Company, Inc., appeals from a judgment upon a jury verdict in favor of defendants in an action resulting from a traffic accident. The Department of Labor and Industries, a party plaintiff at trial, has not joined in the instant appeal; nor have the defendants cross-appealed.

On September 20, 1971, at approximately 6:30 p.m., defendant William Visser (referred to hereafter as the sole defendant) proceeded out of his private driveway driving a farm tractor and pulling a "mint distiller," a trailer about 8 feet in height. He entered State Highway 241, a two-lane road, and proceeded in a southerly direction toward its intersection with Van Belle Road, approximately ½ mile away. He had a clear view of the highway for a mile to a

mile and a half to the north. Before entering Highway 241 he looked, and saw nothing. The mint trailer he was pulling had no operational brake lights or taillights, but did have a slow-moving-vehicle-warning emblem attached to the rear.

Mr. Visser stated he was traveling about 20 m.p.h. until he started to slow to approximately 10 to 12 m.p.h. in order to turn left onto Van Belle Road. Prior to commencing his turn, Mr. Visser gave no left turn signal, nor did he look to the rear. He stated the mint trailer obscured his vision to the rear, and would have obscured any hand signal because of its size.

A Western Packing Company cattle truck was also proceeding south on Highway 241 behind defendant's vehicles. This vehicle consisted of a tractor, plus two trailers, totaling approximately 65 feet in length. At some point just prior to the Van Belle intersection, the Western Packing truck was driven into the northbound lane of Highway 241. When the cab of that vehicle was opposite defendant's vehicles, a collision occurred, killing plaintiff's driver.

Testimony placed the initial impact 20 to 30 feet north of the Van Belle Road intersection. The exact location, and circumstances of the collision, were disputed. Defendant testified he had not started his left turn when the collision occurred. However, gouge marks were found in the northbound lanes which some witnesses testified were made by the Visser vehicles. A 14-year-old boy, who saw the accident, testified that the Western Packing truck swerved to the right just prior to the collision. The speed limit on State Highway 241 at this point was 50 m.p.h. Readings of a tachograph in plaintiff's truck, interpreted by different witnesses, placed plaintiff's speed at the point of impact both below and in excess of the speed limit.

Immediately south of Van Belle Road on Highway 241, the highway proceeded across a small bridge. There was a no-passing line, applicable to southbound vehicles, starting approximately 900 feet north of this bridge and proceeding to the bridge itself.

Plaintiff first contends the trial court erred in ruling, and in instructing, that plaintiff's driver was negligent, as a matter of law, for passing within 100 feet of and at an intersection. The trial court submitted the questions of proximate cause and resulting damage to the jury. Plaintiff primarily asserts that the evidence presented a factual question, *i.e.*, whether plaintiff's driver was actually attempting to pass at the point of collision, or, taking evasive action to avoid a collision.

RCW 46.61.125 provides in part:

(1) No vehicle shall be driven on the left side of the roadway under the following conditions:

. . .

(b) When approaching within one hundred feet of or traversing any intersection or railroad grade crossing;

The violation of a statute, relating to the rules of the road is negligence per se. *Goldfarb v. Wright*, 1 Wn. App. 759, 463 P.2d 669 (1970); *see Hurst v. Struthers*, 1 Wn. App. 935, 465 P.2d 416 (1970). There is no dispute that the plaintiff driver did drive to the left side of the roadway within 100 feet of the Van Belle intersection. Such conduct was properly held negligence as a matter of law, pursuant to RCW 46.61.125. *Hall v. McDowell*, 6 Wn. App. 941, 497 P.2d 596 (1972).[1]

Plaintiff's contention that the record contains evidence showing their driver's action amounted to a taking of evasive action rather than an intentional passing of defendant's vehicles does not require a different result. RCW 46.61.125(1)(b) does not differentiate between passing and taking evasive action; rather, it prohibits driving to the left side of the roadway within 100 feet of an intersection. Furthermore, defendant's towed mint distiller was properly equipped with a slow-moving-vehicle emblem facing toward the rear. RCW 46.37.160(5)(a). It was not shown that plaintiff's driver could not see this emblem as he approached from the rear, or that defendant's vehicles were

---

[1] In the context of the physical facts present, we find no error in using the word "passing" in the instruction.

obscured from vision. The primary duty of avoiding a collision rests on the following driver, and, in the absence of an emergency or unusual conditions, the following driver is negligent if he collides with the automobile ahead of him. *Miller v. Cody*, 41 Wn.2d 775, 252 P.2d 303 (1953); *Woodiwiss v. Rise*, 3 Wn. App. 5, 471 P.2d 124 (1970). There is no evidence of an emergency or unusual conditions. Plaintiff's driver, with a mile of clear road visibility ahead, had an absolute duty to refrain from rearending defendant's vehicles. Consequently, if he was negligent in failing to perform this duty, and such negligence required the taking of evasive action to avoid a collision with defendant, his negligence does not relieve him from his further duty to refrain from driving to the left side of the roadway within 100 feet of an intersection.

As a second contention, plaintiff claims the court erred in giving instruction No. 20 as follows:

> The mint distiller or mint trailer Mr. Visser was pulling at the time of the accident is an "implement of husbandry" under our statutes. It is *not required* to be equipped with stop lights or turn signals. It is required to be equipped with a slow moving vehicle emblem at speeds under 25 mph.

(Italics ours.) It asserts the court should have given plaintiff's proposed instruction No. 2, stating that defendant's mint distiller was a trailer and consequently should have been equipped with stop lights and with electric turn signal lamps.

RCW 46.37.070 requires stop lamps and electric turn signal lamps upon every motor vehicle, trailer, semitrailer, and pole trailer. However, RCW 46.37.010(3) reads as follows:

> (3) The provisions of the chapter with respect to equipment on vehicles shall not apply to *implements of husbandry*, road machinery, road rollers or farm tractors except as herein made applicable.

(Italics ours.)

Defendant testified that the mint distiller is used specifi-

cally for distilling mint. Mint hay is placed into a distiller in the field, and chopped. The distiller is then taken to a distillery plant, where steam is pumped into the distiller itself. Through this process oil, the end product of the crop, is removed from the hay. The hay is then discarded.

The trial court held that the distiller was principally for distilling mint and was used only incidentally on the highway. The court found the mint distiller to be an implement of husbandry as that term is used in RCW 46.37.010 (3). We agree.

■ Whether the mint distiller is within this statutory provision is a question of law for the court, rather than a question of fact for the jury. *Zappala v. Industrial Ins. Comm'n*, 82 Wash. 314, 144 P. 54, 1916A L.R.A. 295 (1914).

Sergeant John Caldwell of the Washington State Patrol, whose duty it was to enforce the licensing and equipment portions of the motor vehicle code, testified that, in his opinion, the mint distiller was an implement of husbandry as used in RCW 46.37.010. He stated that an implement of husbandry is a device used primarily to perform some function on a farm, and if it transports anything, that is just an incidental use.

The trial court relied upon the definition of implements of husbandry as used in Ballentine's Law Dictionary 587 (3d ed. 1969):

> As something exempt from a statutory requirement of registration of motor vehicles, a vehicle designed and used primarily as a farm vehicle but which may be operated or moved temporarily upon the highway. . . .
>
> Any instrument used directly in the business of farming, and for no other purpose is an implement of husbandry. Horse rakes, gang plows, headers, threshing machines, and combined harvesters are as clearly implements of husbandry as are hand rakes, single plows, sickles, cradles, flails, or an old fashioned machine for winnowing.

The court also noted cases where farm wagons used to haul grain; a farm tractor towing two cane carts; and liquid fertilizer applicators were all deemed to be "implements of

husbandry" as that term is defined in various vehicle codes. *Thomas v. Johnson,* 181 S.2d 487 (La. Ct. App. 1965); *Young v. Eyster,* 18 Ohio App. 2d 242, 248 N.E.2d 204 (1969); *Wisconsin Fertilizer Ass'n v. Karns,* 52 Wis. 2d 309, 190 N.W.2d 513 (1971).

The mint distiller was used primarily to chop the mint at a farm and as a device in which to steam the mint at the processing plant. The trailering of this device upon the highway was a secondary and inconsequential use. We agree that the mint distiller meets this definition, and as such, was exempted from the provisions in RCW 46.37.

Plaintiff, recognizing the court may have been correct in interpreting RCW 46.37.010, contends that interpretation does not carry over and make RCW 46.61, rules of the road, inapplicable to implements of husbandry. RCW 46.61.305 in part states: "(1) . . . No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided." RCW 46.61.310(2) requires signal lamps on motor vehicles when:

> the distance from the center of the top of the steering post to the left outside limit of the body, cab or load of such motor vehicle exceeds twenty-four inches, or when the distance from the center of the top of the steering post to the rear limit of the body or load thereof exceeds fourteen feet. The latter measurements shall apply to any single vehicle, also to any combination of vehicles.

It is not necessary to answer this contention in detail. Assuming plaintiff is correct,[2] defendant's vehicle should have

---

[2]Plaintiff's interpretation of RCW 46.61.310 may be correct. The requirements of RCW 46.61.310(2) apply to motor vehicles. RCW 46.04.320 defines a motor vehicle as including every vehicle which is self-propelled. Under this definition, the defendant's tractor was clearly a motor vehicle. The provisions of RCW 46.61.310(2) apply "to any single vehicle, also to any combination of vehicles." The tractor, plus mint distiller, is a combination of vehicles and RCW 46.61.310(2) would, seemingly, be applicable.

Defendant contends the exemption in RCW 46.37.010(3) for "implements of husbandry," also applies to the vehicle requirements included in the rules of the road, RCW 46.61, including RCW 46.61.310. However, RCW 46.37.010(3) states that "The provisions of the *chapter* . . .

had electric turn signals; however, failure to so instruct could not have been prejudicial to plaintiff. The court did instruct that defendant was negligent as a matter of law, for failing to signal at all. Whether defendant was required to have electric signals would not add to that ruling.

█ In a related assignment of error, plaintiff contends the court committed error by giving inconsistent and confusing instructions: (a) by instructing that the mint distiller did not have to be equipped with turn signals (see instruction No. 20 above) and then (b) instructing that defendant was negligent as a matter of law in failing to signal a left turn.

> While each party is entitled to have his theory of the case set forth in the court's instructions, the trial court has considerable discretion in how the instructions are worded. If the instructions are readily understood and not misleading to the ordinary mind they are sufficient. The test of the sufficiency of instructions given on the theory of the case has been held to be whether, from the instructions given, counsel may satisfactorily argue his theory of the case to the jury. *State v. Dana,* 73 Wn.2d 533, 439 P.2d 403 (1968).

*State v. Alexander,* 7 Wn. App. 329, 336, 499 P.2d 263 (1972). These instructions convey the idea that, although

---

shall not apply to implements of husbandry, . . ." (Italics ours.) The current statute is based upon Laws of 1955, ch. 269, § 1(3), p. 1125; it originally stated that the "provisions of this *article* . . . shall not apply to implements of husbandry, . . ." (Italics ours.) In Laws of 1961, ch. 12, § 46.37.010(3), p. 316, the provision was changed to read: "[t]he provisions of this *section.*" (Italics ours.) Then by Laws of 1963, ch. 154, § 1(3), p. 705, the section was amended to read: "provisions of the *chapter* with respect to equipment on vehicles shall not apply to implements of husbandry, . . ." (Italics ours.) Laws of 1963, ch. 154, deals only with new additions, repeals and amendments of sections in RCW 46.37. Consequently, the word "chapter," added by chapter 154 to RCW 46.37.010, refers either to chapter 154 or to chapter 46.37. It cannot be said that it refers to chapter 46.61. Consequently, implements of husbandry are not exempt from the provisions of RCW 46.61. As there was evidence to support the giving of the proposed instruction pursuant to RCW 46.61.310(2), that instruction should have been given. However, as stated above, the failure to so do did not prejudice the plaintiff.

defendant was not required to have electric turn signals, he nevertheless did have a duty to signal a left turn before so turning. We find no prejudicial error.

Next, plaintiff contends the court erred in refusing to give its proposed instruction on wanton misconduct.[3] The definition of wanton misconduct included in the instruction has been approved in this state. *Adkisson v. Seattle,* 42 Wn.2d 676, 258 P.2d 461 (1963); *Sorensen v. Estate of McDonald,* 78 Wn.2d 103, 470 P.2d 206 (1970). In *Sorensen,* the court stated at page 109:

> In *Adkisson v. Seattle,* [citation omitted] we emphasized that wanton misconduct was not negligence because the behavior embraced within the concept involves intent rather than inadvertence, is positive rather than negative and places the actor in a class with the willful doer of wrong.

At best, it can be said that defendant commenced a left turn without giving a signal, with knowledge that traffic may be approaching from behind. However, there existed a no-passing line upon the road, which defendant testified he relied upon. He further had a right to place reliance upon the slow-moving-vehicle emblem upon the rear of his trailer, plus the legal rule that to pass within 100 feet of an intersection is impermissible. Under these facts it cannot be said there is any evidence in the record of wanton misconduct. The instruction was properly refused.

Next, plaintiff contends the court erred in refusing to give its proposed instructions Nos. 3, 7 and 12. All of the

[3]That proposed instruction read as follows: "Plaintiffs in this case contend that defendant Visser was guilty of wanton misconduct.

"Wanton misconduct is the intentional doing of an act which one has a duty to refrain from doing, or the intentional failure to do an act which he has a duty to do, in reckless disregard of the consequences and under such surrounding circumstances and conditions that a reasonable man would know, or should know, that such conduct would, in a high degree of probability, result in substantial harm to another.

"If you find that defendant Visser was guilty of wanton misconduct and that said wanton misconduct was a proximate cause of the accident, he is liable even if you also find that plaintiff was negligent. Contributory negligence is not a defense to wanton misconduct."

provisions included in instruction No. 3, except for one paragraph, were covered by instruction No. 17, to which no assignment of error was taken. The other paragraph of proposed instruction No. 3 again covered the language of RCW 46.61.310(2), an issue previously discussed and held not prejudicial to plaintiff.

No exception was taken to the failure to give proposed instruction No. 7 at trial; review is thus precluded on appeal. *Osborn v. Lake Washington School Dist. 414,* 1 Wn. App. 534, 462 P.2d 966 (1969). Furthermore, proposed instruction No. 12[4] contains all the language of proposed instruction No. 7. Defendant admitted he did not look to his rear immediately before turning; consequently, this instruction should have been given. *Niven v. MacDonald,* 72 Wn.2d 93, 431 P.2d 724 (1967); *Hardtke v. Schanz,* 6 Wn. App. 660, 495 P.2d 700 (1972). He cannot claim exemption from the requirement of looking to his rear before making a left turn by asserting that the trailer he was pulling made such a view impossible. He had a duty, when pulling the mint distiller upon a public highway, to so equip his tractor as to enable him to make a required view to the rear before turning left.

However, the instruction goes only to the negligence of defendant. The jury, by its verdict for defendant, necessarily had to find that plaintiff's negligence was *a* proximate cause of the accident. The failure to give the proposed instruction cannot be prejudicial error. Plaintiff's contributory negligence barred any recovery.

Plaintiff next assigns error to failure to give its proposed

---

[4]Proposed instruction No. 12 read as follows: "A driver intending to turn to the left within an intersection has a duty to look to his rear for the presence of oncoming traffic immediately before he commences to make his turn.

"Such a driver is not relieved of said duty to look to his rear for the presence of oncoming traffic because due to the equipment being used by him at the time he is unable to see to his rear.

"A driver of any vehicle being driven on a public highway has a duty to so equip his vehicle or to use such vehicles as will enable him to have clear vision to his rear for the purpose of viewing any traffic approaching him from his rear."

instructions Nos. 4 and 16, which state that no person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal, either by means of the hand and arm, or by signal lamps. The record contains no evidence that defendant stopped or suddenly decreased the speed of his vehicle. The instruction was properly refused.

Plaintiff assigns error to the failure to give its proposed instruction No. 18. In part, the instruction requests that defendant be held negligent as a matter of law because he commenced his turn prior to the intersection. On this question of cutting the corner, the evidence was in conflict; a ruling of negligence as a matter of law would have been improper. Since this portion of the instruction was incorrect, even if other portions were correct, the instruction could not have properly been given. *Adams v. State,* 71 Wn.2d 414, 429 P.2d 109 (1967).

Finally, plaintiff contends the court erred in failing to give the following proposed instruction upon the emergency doctrine:

"A person, who is suddenly confronted by an emergency through no negligence of his own and who is compelled to decide instantly how to avoid injury and who makes such a choice as a reasonably careful person placed in such a position might make, is not negligent even though he does not make the wisest choice."

If plaintiff was confronted by an emergency, he was so confronted due either to his negligence in failing to perceive and slow down for a slow-moving vehicle, or in attempting to pass within 100 feet of an intersection. The instruction on the emergency doctrine is only to be given if the emergency arose through no negligence on the part of the person asserting the doctrine. *Curtis v. Blacklaw,* 66 Wn.2d 484, 403 P.2d 358 (1965). Since there was no such evidence in this case, the instruction was properly refused.

Judgment is affirmed.

GREEN, C.J., and McINTURFF, J., concur.

Petition for rehearing denied May 29, 1974.